J. H. HOLLY AND MAGGIE A. HOLLY, HIS WIFE, *Appellants*, v. GAINESVILLE NATIONAL BANK, A · CORPORATION, *Appellee.*

### Opinion Filed October 11, 1920.

1. A judgment creditor before proceeding in equity to subject equitable assets of his debtor to the payment of the judgment debt must pursue his legal remedies to every available extent and have a return of the execution that no goods of the debtor are to be found, if such is the case.

2. H agreed in writing to buy certain lands from S, part of the purchase price was paid in cash, and the remainder was to. have been paid in several yearly installments. He entered into possession of the lands and made improvements, but was unable. to complete his payments. His wife with money of her own and that which she borrowed from relatives and friends took over the contract to purchase the lands and paid the amount due, which with principal and interest amounted to the purchase price originally agreed to be paid by H. *Held*: That H had no equitable interest in the land which could be subjected to sale under a creditor's bill for the payment of his judgment debts.

An Appeal from the Circuit Court for Alachua County; James T. Wills, Judge.

Decree reversed.

*Hampton & Hampton,* for Appellants;

*W. S. Broome,* for Appellee.

ELLIS, J.—The Gainesville National Bank in October, 1918, commenced a suit in equity against J. H. and Maggie A. Holly to declare a certain tract of land to be held by Maggie A. Holly in trust for her husband J. H. Holly and subject to the lien of certain judgments at law which the complainant had obtained against D. H. Grace and J. H. Holly as copartners using the name of D. H. Grace & Company during the fall of 1915, and against Monroe Venable and J. H. Holly during the fall of the same year.   These judgments aggregating in amount the sum of thirty-six hundred and ninety-seven dollars and seventy cents principal.   It is alleged that executions were issued upon these judgments and placed in the hands of the sheriff for the purpose of being executed.

As to the execution against D. H. Grace & Company it is alleged "that the sheriff of Alachua County, Florida, has never been able to discover or find any assets or property of whatsoever kind belonging to the said *firm* of D. H. Grace & Company upon which a levy could be made under the judgment and execution against the said D. H. Grace & Company, and your orator avers that said judgment is still unpaid and that said execution in the hands of the said sheriff issued thereon is unsatisfied and that nothing thereon has been paid."

As to the execution against Monroe Venable and J. H. Holly, it is merely alleged that it is "now in the hands of said sheriff as hereinbefore recited, is unpaid and is unsatisfied, and that nothing has been paid upon said judgment or execution."

It is alleged that in October, 1917, A. C. Steenburg and wife conveyed to Maggie A. Holly the lands sought to be subjected to the lien of the above-mentioned executions. They consisted of four sections in Alachua County. It is alleged that the lands were paid for with money belonging to J. H. Holly, who had the conveyance made to his wife to avoid the payment of the judgménts, which the complainant bank held against him. The defendants answered severally. J. H. Holly admitted that the judgments were obtained as alleged in the bill and that they are unsatisfied; that A. C. Steenburg and wife conveyed the lands to Maggie A. Holly, but denied that he paid for the land or that it was conveyed to his wife to avoid the payment of the judgments mentioned. He averred that the money used by his wife to pay for the land was her separate statutory property, part of it was borrowed by her from H. E. Taylor and a mortgage given to him upon part of the property to secure its payment; that the greater part of the money was borrowed by her from her brother, B. J. Massey, of New Brockton, Alabama, and a mortgage was given to him upon two sections of the land to secure the debt due to him; that no part of the money belonged to him, and that he has no right, title or interest in the land. The answer incorporated a demurrer to the bill for want of equity.

The answer of Mrs. Holly contained very much the same averments, and disclaimed any knowledge of the allegations of her husband's indebtedness to the bank and the

unsatisfied judgments. She also denied that the money which was paid for the land belonged to her husband, but that she borrowed it from her brother and H. E. Taylor and gave them mortgages upon part of the property to secure the payment of the same. There was also incorporated a demurrer to the bill in her answer for want of equity.

An examiner was appointed to take testimony and report the same to the court. Upon final hearing the court decreed that Steenburg and, wife sold the land to J. H. Holly for the sum of twelve thousand dollars, that Maggie, his wife, paid ten thousand dollars of that sum, and that her husband paid two thousand dollars of the purchase money and he has an interset to that amount in the land which the court valued at twelve thousand dollars. It was decreed that the bank recover from the defendants, J. H. and Maggie A. Holly, the sum of two thousand dollars, together with costs, and fixed a time limit in which the sum decreed should be paid; that in default of the payment of the sum decreed to be paid that the land should be sold, or a sufficient portion thereof, to satisfy the sum of two thousand dollars and costs and interest, and that he hold any overplus to await the further order of the court. From this decree the defendants appealed.

The errors assigned are that the court found the fact to be that Steenburg sold the land to J. H. Holly for $12,000.00; that J. H. Holly paid $2,000.00 of the purchase money; that the bank should have and recover from J. H. and Maggie Holly the sum of $2,000.00, with costs, etc.; that a master should sell the land, or a sufficient portion thereof, to satisfy the decree; the rendering of the final decree; refusing to dismiss the bill upon the

defendants' demurrers because there was no allegation of insolvency of the defendants in execution, nor that the executions were ever returned *nulla bona* by the sheriff nor was there any proof thereof.

The allegations of the bill as to the failure to realize upon the executions against Grace & Company and Venable and Holly are not sufficient to justify the relief prayed for, nor does the testimony show that any return had been made by the sheriff prior to the filing of the bill sufficient to satisfy the rule. This was not a case in which the title to the land was ever held by J. H. Holly and conveyed by him in fraud of his creditors, but one in which the title was never in him, but alleged to be held by his wife on a secret trust for him. The evidence shows that the title was never in him, but that in August, 1910, A. C. Steenburg and wife by a written agreement entered into with J. H. Holly agreed to sell to him two sections of the land for the sum of $6,400.00, of which they acknowledged receipt of $1,280.00, the remainder to be paid as follows: $1,000.00 on the 1st of January of each of the following years: 1912, 1913, 1914, 1915, and the remainder on January 1st, 1916. They also agreed to sell to him the other two sections of land on January 1st, 1911, for the same price, $6,400.00, provided they had not sold before that date. The original document was transmitted by order of the court below to this court, but it serves no especial purpose except to show that from the perplexing figures written upon the back that in 1917 there was a greater sum due on the contract for principal and interest than was due in August, 1910. In October, 1917, Steenburg and wife, by their attorney in fact, conveyed the land to Maggie Holly, the consideration expressed was $10.00 and other valuable considerations. The execution of this deed was acknowledged by the attorney in fact

for the grantors in April, 1918, and was recorded during the same month. According to the testimony of A. O. Steenburg, the attorney in fact for the grantors, the amount paid at the time was $12,000.00. That $10,000.00 of that sum was money borrowed by Mrs. Holly from her brother for the purpose of buying the land, the court found to be the fact from the evidence adduced. There was evidence tending to show that the remaining sum of two thousand dollars was borrowed by Mrs. Holly from H. E. Taylor, both Mr. Holly and Taylor testified to this fact, and that testimony was uncontradicted. Mrs. Holly also testified that before she paid the $12,000.00 to Steenburg she had made other payments to him in cattle which she had purchased with money derived from the sale of a tract of land at Kanapaha. This land she purchased at a sheriff's sale in December, 1916. The cattle had been mortgaged by J. H. Holly to the First National Bank in December, 1914, to secure a debt of $9,400.00 That mortgage was assigned to Mrs. Holly by the bank in May, 1917, after some of the cattle of which there were about 1,200 head, had been sold by the bank and applied on the indebtedness of J. H. Holly. C. I. Baird was the purchaser and bought the cattle in September, 1916. There was some confusion about this part of the evidence, and Mrs. Holly was recalled and explained that the cattle which she delivered to Mr. Steenburg were not the cattle which she acquired from the bank, but cattle which she had owned for many years under a certain mark and brand. But, however this may be, the fact was shown that when the contract for the sale of the land matured, J. H. Holly, who may have made large payments upon it, was unable to carry out his agreement, and Mrs. Holly took it over with Steenburg's consent and paid the balance due. It cannot be said from this

State of facts that J. H. Holly had any interest whatsoever in the land. If. Mrs. Holly had not produced the money, $12,000.00, to pay the balance due upon the contract, how could J. H. Holly have recovered from Steenburg the money paid by him and the value of the improvements made upon the place? Certainly he had no interest in the land and could not compel a conveyance to himself of any part of it.

The endorsements made by the sheriff upon the executions which were offered in evidence were sufficient to show no property to be found of J. H. Holly upon which they could be levied, but that endorsement seems to bear date of November 23, 1915, the date upon which they came to his hands, but his testimony shows that the return of *"nulla bona"* must have been made at some other time because he testified that at one time, presumably after the executions came to his hands, he went to see Mr. Holly and at another time he sent a deputy from Archer to make some investigations about cattle which he had heard were owned by Mr. Holly. The allegations of the bill do not show that the complainant exhausted his legal remedies, and the property which he seeks to subject, according to the evidence is not affected by such a fraudulent transaction as that the conveyance could be treated as a nullity, the title never having been in J. H. Holly. The complainant's judgments were never a lien upon the land described. His interest, if any, was merely an equitable asset. And if he had the title made to his wife to hinder, delay and defraud his creditors; equity will regard the conveyance as inoperative on account of the fraud, but before the complainant can *resort* to equity in pursuit of such an equitable asset in aid of an execution he must have pursued his legal remedies to every available extent and have a return of his

execution *nulla bona*. This doctrine was announced in the case of Robinson v. The Springfield Co., 21 Fla. 203. See also Neubert v. Massman, 37 Fla. 91, 19 South. Rep. 625. In the latter case the court, speaking through CIR-CUIT JUDGE MALONE, sitting as a justice of this court, said: "Before a court of equity will extend its aid in such cases the judgment creditor must have exhausted his remedies at law by suing out execution and having a return *nulla bona* made thereon by the proper officer. Then and not before he may successfully invoke the aid of equity to reach equitable assets. Robinson v. Springfield Company, 21 Fla. 203; Richardson v. Gilbert, 21 Fla. 544; Freeman on Executions, Sec. 428. The plaintiffs, Gomm & Leffler, had not sued out execution on their judgment and caused a return of *nulla bona* to be made thereon at the time of filing the original bill, therefore they were not entitled to any relief in a court of equity, and the demurrer should have been sustained as to them."

In that case the judgment debtor had bought and paid for the land and had the title taken in the name of another. In the case at bar the judgment debtor had not bought, nor had he paid for the land. He had merely agreed to buy, made some payments thereon, was unable to complete his contract and faced a loss of land and payments because of his default. His equity, if any, does not appear from the evidence to have been of any value.

If some stranger had with his consent at this point in the transaction taken over the contract and paid Steenburg the balance due and taken a conveyance to himself, upon what principle could the property be subjected to the payment of the judgment of complainant in the absence of a showing of fraud existing between Holly and the grantee to hinder and delay the creditor?

The bill should have been dismissed upon the final hearing because of the insufficiency of its allegations in the matter discussed and the insufficiency of the evidence to support any theory of fraud perpetrated by the defendants upon the complainant. So the decree is reversed with directions to dismiss the bill.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.