Punta Gorda State Bank et al. v. W. E. Wilder et al.—Syllabus.

PUNTA GORDA STATE BANK, A CORPORATION, AND E. O.
PAINTER FERTILIZER CO., A CORPORATION, *Appellants*, V.
W. E. WILDER, A. T. GORE, A. T. SHELFER AND DESOTO
NATIONAL BANK, *Appellees*.

Division B.

Opinion Filed February 19, 1927.

Petition for Rehearing Denied April 19, 1927.

1. Decree of Chancellor will not be reversed on facts unless it
is made clearly to appear that the decree is erroneous.

2. It must be conceded that a judgment creditor has the right
to treat an attempted transfer of property to which the judg-
ment debtor had the legal title as a nullity and to sell the
property so conveyed under execution, as though no transfer
by connivance had been made, but the existence of such
remedy at law does not interfere with the right to resort to
a court of equity for the vacation of the fraudulent con-
veyance as an obstacle in the way of the full enforcement
of the judgment, and to remove a cloud on the title to the
property; fraud being one of the recognized subjects and
most ancient foundations for equity jurisdiction.

3. Where a judgment creditor seeks by a bill in equity to set
aside an alleged fraudulent conveyance and subject the
property therein attempted to be conveyed to his judgment,
if the judgment debtor had only an equitable title to such
property it is necessary to exhaust the legal remedies and
have a return of *nulla bona* upon execution, before filing
such bill in equity; but it is otherwise where the judgment
debtor had legal title and fraudulently conveyed the same.

4. The notes in the instant case were legal assets of the judg-
ment debtor and it is alleged were fraudulently transferred
to defeat and defraud creditors, and we find that the evi-
dence supports the findings of the Chancellor that the notes
were fraudulently transferred to defeat and defraud judg-

ment creditors. Therefore, we hold that it was not necessary for the complainant to exhaust the legal remedies and have a return of "*nulla bona*" upon execution before it could maintain its bill in equity.

An Appeal from the Circuit Court for Hardee County; W. J. Barker, Judge.

Reversed.

*Leitner & Leitner*, for Appellants;

*W. D. Bell*, for Appellees.

BUFORD, J.—The appellant filed its bill of complaint alleging that it had recovered a large judgment against the defendant Wilder, and that E. O. Painter Fertilizer Company had likewise recovered a large judgment against Wilder. The bill further alleged that Wilder in a certain trade with one Glass had received as his part two notes of $5,000.00 each made by one Turner to Glass; that Wilder was the owner of the notes and through his agent, Gore, sold and delivered the notes to Shelfer and that Shelfer delivered to Gore, as agent for Wilder, $1,000.00 in cash, $2,000.00 in bank certificates of deposit of DeSoto National Bank, and two notes in the sum of $2,000 each payable to the defendant, Gore; that Gore was the agent of Wilder and that the notes were taken in Gore's name for the purpose of defrauding creditors; that the notes had been delivered to Wilder and that he at the time had them in his possession. The prayer of the bill was for the Court to decree "that the said notes given by the said Shelfer to the said A. T. Gore and the said certificate of deposit made by the DeSoto National Bank to the said A. T. Gore, may be decreed to be the property of the said W. E. Wilder, and the same delivered up to this Court for the purpose of satis-

fying and paying the two said judgments owned by orators; that the defendant A. T. Gore may be temporarily enjoined from transferring the said notes or the said bank certificate of deposit; that the said W. E. Wilder may be temporarily enjoined from interfering with the said notes or time deposit; that the defendant A. T. Shelfer will be temporarily enjoined from paying the said notes to the said A. T. Gore, and the said defendant DeSoto National Bank may be temporarily enjoined from paying the said time certificate to the said A. T. Gore until the further order of the Court, and that upon final hearing thereof the said temporary injunction may be made perpetual, enjoining the payment and transfer of the said notes or certificate until the said judgments of orators have been fully paid and satisfied, that the defendant W. E. Wilder may be required to answer under oath the following interrogatories:

1. Is it not a fact that you owned or had some interest in the two notes made by W. H. Turner to J. W. Glass, and which notes were delivered by A. T. Gore to A. T. Shelfer?

2. Is it not a fact that you directed Mr. Gore to sell those notes to A. T. Shelfer?

3. Is it not a fact that you now have in your possession or the possession of A. T. Gore for you, the certificate of deposit made herein, and two notes?

4. Is it not a fact that the $1,000.00 that was paid by A. T. Shelfer to A. T. Gore was delivered to you by Gore, or the greater portion of it delivered to you?

That the defendant A. T. Gore may be required to answer under oath the following interrogatories:

1. From whom did you get the two Glass notes which you delivered to A. T. Shelfer?

2. How much did you pay for those two notes?

3. What have you done with the two notes and the time certificate that you got from A. T. Shelfer and the DeSoto National Bank as a consideration for the said notes?

4. What did you do with the $1,000.00 as part of the consideration for the said notes?

5. Is it not a fact that W. E. Wilder owns the notes and the certificate of deposit and the $1,000.00 and you were acting as his agent in selling those two Glass notes to Shelfer?

6. What have you done with the said notes made and delivered to you from Shelfer, and also the time certificate?

7. What did you do with the said notes and time certificate upon returning to Limestone on October 27th?

And that your orators may have such other and further relief in the premises as equity may require and to your Honor shall seem meet.''

Demurrers were filed which were overruled. Afterwards answers were filed and testimony taken before a Master appointed for that purpose. Upon the report of the Master the Court made the following finding, to-wit:

''After giving this case considerable thought and attention, it is the finding of the Court that the two old notes known as the Glass notes were, and have always been the property of the defendant W. E. Wilder; that W. E. Wilder placed these notes in the hands of the defendant A. T. Gore and that the title to the said notes was never conveyed by the said Wilder to the said Gore; the said Wilder permitted the said defendant A. T. Gore to sell the said two Glass notes and to take in his own name the two notes of A. T. Shelfer et al.,'' and the said bank certificate set out in the bill; that the defendant W. E. Wilder never has had a legal title to the said two notes and the bank certificate mentioned in the bill, as made by A. T. Shelfer; that since

the said note of A. T. Shelfer, and the bank certificate were never in the name of W. E. Wilder, the title that W. E. Wilder has in and to those notes and that certificate was an equitable interest and could only be reached by a proper procedure in chancery.

The Court further finds that a note in this State is not subject to levy and under the executions of the complainants they had no lien upon the said notes, and the said notes could be transferred, sold or assigned by W. E. Wilder, free from any claims of the complainants, and that when he did permit the defendant Gore to take the said two notes of Shelfer and the said bank certificate there was no lien following the said new notes and certificate.

The Court further finds that the interest which the complainants are attempting to reach in this bill is an equitable interest and not a legal interest, and before they can come into a Court of chancery they must have shown to this Court that they had gone to the utmost in law before they came into a Court of Chancery, and that the two executions as held by the complainant should have been returned to their proper Courts with the proper endorsements thereon *"nulla bona"* before the complainants could ask the aid of a Court of Chancery; that it appears to the said Court, and the Court finds that the executions are not so returned, but they are still in the hands of the Sheriff of DeSoto County, and the complainants have not done their utmost to satisfy the said executions.

Summing up, the Court finds that the complainants are atempting to reach an equitable asset in the hands of the defendant A. T. Gore, and the complainants do not show that they have done their utmost to satisfy the said executions, and the bill will be dismissed."

The record also shows that an order was made by the

Court and filed prior to the filing of the above stated order, as follows:

"This cause coming on this day for final hearing upon the pleadings and the Master's report filed herein, and the same was argued by Counsel for the respective parties, and it appearing to the Court from the pleadings and the evidence contained in the Master's report that the equities of said cause are with the defendants and against the complainants, and that the complainants are not entitled to the relief prayed for in their bill of complaint; IT IS THERE-FORE, ORDERED, ADJUDGED AND DECREED that the bill of complaint filed in said cause be, and the same is hereby dismissed and that the injunction heretofore granted herein be and the same is hereby dissolved."

The appeal is from the order quoted, and from all inter-locutory orders made prior to the rendition of the decree.

There were seven assignments of error, as follows:

"1.   The Court erred in dismissing the Complainants' bill.

2.   The Court erred in dissolving the injunction.

3.   The Court erred in his decree dismissing the decree and dissolving the injunction.

4.   The Court erred in striking the entire testimony of the witness, J. L. Hampton, Sheriff of DeSoto County.

5.   The Court erred in sustaining the exception of the defendant to the question propounded to the witness W. L. Koon, as follows: "Did your bank, one of the complainants in this case, obtain a judgment against W. E. Wilder?"

6.   The Court erred in holding that it was necessary that the executions should be returned to the Court "*nulla bona*" before complainant had a remedy in equity.

7.   The Court erred in his findings that a chose in action is an entire equitable asset and could be reached only by an equitable proceeding."

All of these assignments except the 4th and 5th are based upon the order of the Court dismissing the decree and dissolving the injunction. We do not think it is needful to comment on points raised by the 4th, 5th and 6th assignments of error further than to say that it is not clearly shown that the ruling of the Chancellor in regard to the matters complained of was erroneous.

It appears that the injunction was dissolved and the bill of complaint dismissed upon the theory that it was necessary that the executions be shown to have been returned to the Court *"nulla bona"* before the complainant had a remedy in equity.

After an examination of the record, we are of the opinion that this rule does not apply to cases like the one at bar. In Balsley v. Union Cypress Company, — Fla. —, opinion filed September 22, 1926; 110 Sou. 263, this Court say:

"1. It must be conceded that a judgment creditor has the right to treat an attempted transfer of property to which the judgment debtor had the legal title as a nullity, and to sell the property so conveyed under execution, as though no transfer by connivance had been made, but the existence of such remedy at law does not interfere with the right to resort to a Court of equity for the vacation of the fraudulent conveyance as an obstacle in the way of the full enforcement of the judgment, and to remove a cloud on the title to the property: fraud being one of the recognized subjects and most ancient foundation for equity jurisdiction. See Logan v. Logan, 22 Fla. 561, 1 Am. St. Rep. 212, and authorities there cited.

But, it is earnestly insisted by appellant, the Logan Case does not apply for the reason that there was no adequate remedy at law in that case. A careful reading of the case, however, discloses that the Court did recognize a remedy at law available to the complainant, and, after stating such

remedy, said: " 'Yet the fraud alleged in the bill gave him also a concurrent right to come into a Court of equity.' "

Appellant also insists that the case of Newbert v. Massman, 37 Fla. 91, 19 So. 625, states the law to be that it is necessary to show that an execution has issued on the judgment and a return *nulla bona* made before a creditor's bill may be filed. Counsel appear to have overlooked the distinction made in that case between equitable title and legal. title of the judgment debtor. This distinction is the very gist of the cause now before the Court.

In the case of Holly v. Gainesville Nat. Bank, 80 Fla. 523, 86 So. 444, which appellant also cites, it is to be observed that the property sought to be reached by the creditor's bill was not the legal estate of the defendant, but at most the equitable estate. In the Holly v. Gainesville National Bank Case, *supra*, Judge ELLIS, in giving his opinion, very clearly pointed out the distinction that it was an equitable and not a legal title. He also made plain that in the Neubert-Massman Case the controversy was over an equitable title. Both these cases refer to Robinson v. Springfield Co., 21 Fla. 203, and Richardson v. Gilbert, 21 Fla. 544. In the Richardson-Gilbert Case the Court referred to the property as "an equitable asset." In the Robinson-Springfield Co. Case, Justice Raney, after a very elaborate discussion of the entire case, said:

" 'As to all the real estate of which the legal title has been in Robinson we think the bill sufficient, as to such as the title of has not been in him but was conveyed directly to Mrs. Robinson, we do not think the bill shows a sufficient exhaustion of legal remedies.' "

In view of the very full and complete discussion of the subject in the cases cited, it would seem a needless employ of words to here restate the principles and reasons upon which those conclusions were reached. It may therefore

be briefly stated that where a judgment creditor seeks by a bill in equity to set aside an alleged fraudulent conveyance and subject the property therein attempted to be conveyed to his judgment, if the judgment debtor had only an equitable title to such property it is necessary to exhaust the legal remedies and have a return of *nulla bona* upon execution, before filing such bill in equity; but it is otherwise where the judgment debtor had legal title and fraudulently conveyed the same.''

The notes in the instant case were legal assets of the judgment debtor and it is alleged were fraudulently transferred to defeat and defraud creditors and we find that the evidence supports the findings of the Chancellor that the notes were fraudulently transferred to defeat and defraud judgment creditors. Therefore, we hold that it was not necessary for the complainant to exhaust the legal remedies and have a return of *"nulla bona"* upon execution before it could maintain its bill in equity.

The decree dissolving the injunction and dismissing the bill of complaint is therefore, reversed, with directions for such further proceedings as may be had not inconsistent with the views expressed in this opinion.

Reversed.

WHITFIELD AND TERRELL, J. J., concur.

ELLIS, C. J., AND STRUM AND BROWN, J. J., concur in the opinion.

ON RE-HEARING.

Opinion Filed April 19, 1927.

1. **Where** the Court acquires equity jurisdiction to determine the *bona fides* of the dealings between parties and to deter-

mine whether or not the property involved was the property of one or the other of such parties and to enjoin the transfer or sale of the property, the Court of Chancery has complete jurisdiction and authority under a general prayer of the bill to do complete justice.

Re-hearing denied.

*Leitner & Leitner,* for Appellants;

*W. D. Bell,* for Appellees.

PER CURIAM.—In this case the notes made by Shelfer to Gore, the $1,000.00 in cash paid by Shelfer to Gore and the $2,000.00 bank certificate of deposit made payable to Gore constituted assets for which Gore had exchanged the property of Wilder in which Gore had no legal or equitable interest and by the transaction Gore acquired no property interest in the assets so obtained.   The transaction amounted to a fraudulent transfer of assets to defeat the claim of creditors and while a bill in equity might have been maintained to reform the instruments, without praying further relief, we see no reason why the entire matter should not have been disposed of in one suit, which course was pursued in this case.

The Court acquired equity jurisdiction to determine the *bona fides* of the dealings between Wilder and Gore and to determine whether or not the property involved was the property of Wilder or the property of Gore and to enjoin the transfer or sale of the property, and having such jurisdiction, the Court of Chancery had complete jurisdiction and authority under the general prayer of the bill to do complete justice.   Donegan v. Baker & Holmes Co., 73 Fla. 241, 74 Sou. 202; Farrell v. Forest Investment Co., 73 Fla. 191, 74 Sou. 216; Szabo v. Speckman, 73 Fla. 374, 74 Sou.

411; Commercial Bank v. First National Bank of Gainesville, 80 Fla. 685, 87 Sou. 315.

The petition for rehearing is denied.

ELLIS, C. J., AND WHITFIELD, TERRELL, STRUM, AND BUFORD, J. J., concur.

BROWN, J., dissents.