W. E. WILDER and A. T. GORE, *Appellants*, v. PUNTA GORDA STATE BANK, a Corporation; and E. O. PAINTER FERTILIZER COMPANY, a Corporation, *Appellee*.

Opinion filed August 2, 1930.

*W. D. Bell,* for Appellants;

*Leitner & Leitner,* for Appellees.

DAVIS, Commissioner:

This is the second time that we have been called upon to consider this case. A statement of facts will be found in a decision of this Court when the case was here on a former appeal. See Punta Gorda State Bank v. Wilder, 93 Fla. 301, 112 So. R. 569.

The appellants have assigned as error: (1) The entering of the final decree, (2) Overruling demurrer of A. T. Gore to the bill of complaint, (3) Overruling demurrer of W. E. Wilder to the bill of complaint, and (4) Sustaining a motion to strike a part of the answer of A. T. Gore.

The last assignment of error has been abandoned by the appellants.

Special Equity Rule 4 (Vol. 5, page 4685-6, Comp. Gen. Laws of Florida, 1927) contains the following provision:

"If the appellee desires to have any ruling made against him reviewed upon such appeal, he shall within

the time prescribed by these rules for filing his additional directions, file a complete assignment of all the errors he intends to rely upon in the appellate court, * * *. If the appellee fails to file and serve cross-assignments of errors as herein provided, the parties will be confined on the hearing to the consideration of the assignments of error filed by appellant."

When this case was here before, it was upon an appeal from a decree dismissing the bill of complaint after a hearing upon its merits. Appellees, including W. E. Wilder and A. T. Gore (the present appellants) did not at that time assign as error the ruling of the lower court overruling the demurrers of W. E. Wilder and A. T. Gore, as they had a right to do under the rule that we have referred to.

It is settled here that all points adjudicated by an appellate court upon a writ of error or upon an appeal become the law of the case and are no longer open to discussion or consideration. Florida East Coast R. Co. v. Geiger, 66 Fla. 582, 64 So. R. 238; Christopher v. Mungen, 66 Fla. 467, 63 So. R. 923; First Nat. Bank v. Ulmer, 66 Fla. 68, 63 So. R. 145; A. R. Harper Piano Co. v. Seaboard Air Line Ry., 65 Fla. 490, 62 So. R. 482; McKinnon v. Johnson, 57 Fla. 120, 48 So. R. 910; Sanders v. State, 82 Fla. 498, 90 So. R. 455. But we have also held that this principle has no applicability to, and is not decisive of, points presented upon a second writ of error that were not presented upon the former writ of error and consequently were not before the appellate court for adjudication. Florida East Coast R. Co. v. Geiger, *supra;* Hillsborough Grocery Co. v. Leman, 62 Fla. 208, 56 So. R. 684; Ross v. Savage, 66 Fla. 106, text 124, 63 So. R. 148; Paul v. Commercial Bank, 69 Fla. 62, 68 So. R. 68.

It is in effect contended by appellants that the reversal of this cause upon the former appeal was not an adjudica-

tion of any other question than those in terms discussed and decided and that upon this appeal any other question may be assigned for error. This argument would have great weight if the case were here on writ of error, because we have no statute or rule of court that authorizes or permits the filing and consideration of cross-assignments of errors in common-law actions; and were we to hold that on writ of error sued out by the plaintiff a reversal of a judgment at law would thereafter estop the defendant from questioning the propriety of a ruling on a demurrer to the declaration by writ of error sued out by him to bring up for review an adverse judgment; he would be deprived of the opportunity to have the correctness of the decision of the lower court passed upon by this Court. However, in chancery causes, successful parties in the court below are permitted to have adverse rulings on pleadings or other interlocutory matters reviewed upon appeal from a final decree favorable to them by assigning such rulings as error.

The public good requires that litigation should be terminated as speedily as possible, if it can be accomplished without jeopardizing any of the rights of the litigants; and this idea doubtless impelled the Court to adopt the above quoted provision of Special Equity Rule 4.

In the State of Georgia, there was a provision in the Civil Code, as follows:

"No cause shall be carried to the Supreme Court upon any bill of exceptions, so long as the same is pending in the court below, unless the decision or judgment complained of, if it had been rendered as claimed by the plaintiff in error, would have been a final disposition of the cause, or final as to some material party thereto; but, at any stage of the cause, either party may file his exceptions to any decision, sentence or decree of the superior courts; and if the same is certified

and allowed, it shall be entered of record in the cause; and should the case at its final determination be carried by writ of error to the Supreme Court by either party, error may be assigned upon such bill of exceptions, and a reversal and new trial may be allowed thereon, when it is manifest that such erroneous decision of the court has or may have affected the final result of the case." Section 5526, Code of Georgia, 1895.

In construing this provision, the Supreme Court of Georgia, in the case of Hodgkins v. Marshall, 102 Ga. 191, 29 So. E. R. 174, text 177, held:

"That each writ of error prosecuted to this court brings under review all errors of law alleged to have been committed prior to the time it was issued, and, if the party filing the exceptions *pendente lite* is the defendant in the first writ of error, he should, either by cross bill of exceptions or upon the record in this court, assign error upon his exceptions *pendente lite,* or he will be thereafter held to have waived them. This statement is the logic of the decision (Story v. Brown, 98 Ga. 570, 25 So. E. R. 582), for, while this court may give direction concerning matters over which it has jurisdiction by virtue of a writ of error sued out to the final judgment of a lower court, it could not give direction touching a matter over which it had no jurisdiction; and if, by means of the writ of error sued out to the final judgment, it did not likewise acquire jurisdiction of all previous interlocutory exceptions, then it would be without jurisdiction to give direction touching such exceptions; and it could not be held that a party would be barred from the subsequent prosecution of his exceptions *pendente lite,* unless it was held

that they become attached to, and a part of, the writ of error first sued out after their allowance.

"We have thus far endeavored to show that not only are none of the decisions of this court in conflict with the view we take, but that its previous deliverances are in accord with the view which we now express. Not only is the construction of the Code above quoted a natural one, but it is one which commends itself upon consideration of a sound public policy. That there should be at some time an end to litigation, and that litigants should be encouraged to speed their causes, are important considerations in the administration of the public justice. Any other rule than the one we now lay down might tend indefinitely to protract litigation. We will endeavor to illustrate by one example which might arise, and doubtless has arisen, in the experience of many members of the legal profession. A plaintiff brings an action to which a general demurrer is overruled. The defendant elects not to prosecute an 'interlocutory' writ of error, but files exceptions *pendente lite*. He wins his case upon the trial before the jury. The plaintiff moves for a new trial, which is overruled. He then prosecutes the writ of error to this court, and, upon the hearing here, the judgment is reversed. The cause is remanded. Upon another trial it results again in favor of the defendant. The same process is repeated. It is again remanded. Upon the next trial the plaintiff wins his case. Thereupon the defendant moves for a new trial, which being overruled, he prosecutes his writ of error to this court. In that writ of error he assigns error upon the exceptions *pendente lite* filed in the first instance to the judgment overruling his demurrer to the plaintiff's declaration, and upon the third writ of error to this court it is solemnly adjudicated that the plaintiff did not ever at

any time have a cause of action against the defendant. The immense amount of nervous energy necessary to be expended in the numerous and protracted trials of this tedious, long-drawn litigation is wasted, and all goes for naught when it is finally determined that the defendant was entitled in the first instance to have had the plaintiff's action dismissed on demurrer.

"These considerations lead us to the conclusion that, whenever a writ of error is filed to a final judgment, it should draw to itself all assignments of error which had been previously reserved in the case, to the end that the vexed questions which arise in the course of litigation may be settled as speedily as possible."

We find much to commend in what the Georgia Court has said, and can see no reason why its logic should not be invoked in this case. We therefore hold that when the cause was first brought here, the appellees in failing to properly present to this Court for review the rulings of the lower court on the demurrers to the bill of complaint, waived the right to thereafter assign such rulings as error.

Taking up now the first assignment of error, we have before us no question as to the sufficiency of the bill of complaint. Upon the former appeal, this Court found that the evidence supports the allegations of the bill that "the notes ("Glass notes") were fraudulently transferred to defeat and defraud judgment creditors;" and further that "It was not necessary for the complainant to exhaust the legal remedies and have a return of 'nulla bona' upon execution before it could maintain its bill in equity;" and the decree was reversed "with directions for such further proceedings as may be had not inconsistent with the views expressed in this opinion."

That decision, so far as it goes, is the law of the case; but the point is now made that one of the notes which

were received from Shelfer by the appellant Gore for the
"Glass notes" was not in his (Gore's) possession; that it
had been assigned by him to one W. C. Coker before the
bill in this case was filed, of which appellees were advised
by Gore's answer; and that no steps have been taken to
make such assignee a party to the litigation. There is
evidence in the record that tends to support this conten-
tion. We have referred to the former transcript and find
that this question was not discussed and decided by this
Court on the former appeal, nor was there any ruling of
the lower court upon which could be predicated a cross-
assignment of error raising it. The decree from which
the present appeal was taken finds and decrees the "Shel-
fer note" which is alleged to have been transferred by
Gore to W. C. Coker to be the property of W. E. Wilder
and further decrees that the appellants, Gore and Wilder,
immediately deliver said note to the master of the court
and upon failing or refusing to deliver it up, they and each
of them shall be held in contempt of court and also that
the said Shelfer "be and he is hereby perpetually enjoined
from paying the said notes" to the said Wilder or the said
Gore or any one claiming by, through or under them
"since the institution of this suit." If Gore held the Shel-
fer notes as agent for Wilder with the apparent power to
transfer them and did transfer one of them to Coker, prior
to the bringing of this suit, then Coker has the right to
collect the same, unless he was a party to, and received
the note in pursuance of, a scheme to defraud appellees.
In other words, the burden is upon the appellees to allege
and prove that Coker holds the note as a fraudulent as-
signee or transferee, and for such allegations and proof to
be binding upon Coker, he must be made a party to the
suit. 5 Ency. P. and Pr. 543-4.

Inasumch as Coker is not a party to this litigation, the
lower court erred in finding and decreeing that the note

represented to have been transferred to him is the property of W. E. Wilder, and also erred in decreeing that said Wilder and said Gore deliver said note to the master of the court and upon failure and refusal to deliver it up, they and each of them be held in contempt of court. The court also erred in enjoining said Shelfer from paying said note to any one claiming said note by, through or under said Gore or said Wilder since the commencement of this suit.

The decree is reversed and the cause is remanded with directions that the complainants, if they so elect, be allowed to amend their bill within thirty days from the going down of the mandate and that upon failure to so amend said bill, that the decree appealed from be changed so as to conform to the views herein expressed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the decree of the Court below should be, and the same is hereby, reversed, and the cause remanded with directions that the complainants, if they so elect, be allowed to amend their bill within thirty days from the going down of the mandate, and that upon failure to so amend said bill, that the decree appealed from be changed so as to conform to the views expressed in the opinion of the Supreme Court in this cause.

TERRELL, C. J., and WHITFIELD, ELLIS, STRUM and BUFORD, J. J., concur.