THE STATE OF FLORIDA, ex rel., BOARD OF COMMISSIONERS OF INDIAN RIVER MOSQUITO CONTROL DISTRICT, etc., *Relators,* v. ALBERT O. HELSETH, et al., as and Constituting the Board of County Commissioners of Indian River County, et al., *Respondents.*

140 So. 655.

Division B.

Opinion filed February 10, 1932.

210

For former proceedings see 138 Sou. Rep. 625.

*Vocelle & Mitchell,* of Vero Beach, for Relators;

*C. P. Diamond,* of Vero Beach, for Respondent.

DAVIS, J.—This is an original proceeding in which an

alternative writ of mandamus was issued by this Court, commanding the respondents, County Commissioners of Indian River County, to carry into effect a tax levy of six mills on the taxable property in Indian River County located within the territorial limits of Indian River Mosquito Control District which was created and exists under Chapter 11128, Acts of 1925, as amended by Chapter 14381, Acts of 1929.

On December 22, 1931, the Court overruled respondents' demurrer and motion to quash the alternative writ and granted the motion of relators for a peremptory writ. See State ex rel. Board of Commissioners of Indian River Mosquito Control Dist. v. Board of County Commissioners, 103 Fla. 946, 138 Sou. Rep. 625. Promptly thereafter respondents filed their motion to be allowed to interpose an answer and return to the alternative writ and tendered with their motion the answer and return which they proposed to file. On January 14, 1932, the Court permitted the filing of the answer and return. The case is now before the Court for final disposition upon the answer, a replication to the answer, a demurrer to the replication, a motion by respondents to quash the alternative writ and a motion by relators for the issuance of a peremptory writ, the answer and return to the contrary notwithstanding. Chapter 11128, Laws of Florida, 1925, Extra Session, created the Indian River Mosquito Control District and authorized a tax levy not exceeding three mills for the purposes of the District. Chapter 14381, Laws of Florida, Acts of 1929, purports to amend Chapter 11128, Acts of 1925, so as to authorize a tax levy not to exceed ten mills for the purposes of the District. In this case the requirement of the alternative writ is that the respondents be commanded to levy a tax of six mills, so the Commissioners of the Indian River Mosquito Control District, who are the relators here, necessarily must rely upon Chapter 14381, Acts of 1929, as authority for a tax levy of six mills and as the legal basis for the

issuance of a peremptory writ of mandamus in this case to compel such a levy.

The attack on the alternative writ which is now asserted by the answer and return, is that the amendatory act, Chapter 14381, Acts of 1929, was never constitutionally passed by the Legislature in accordance with requirements of Section 17 of Article III of the State Constitution as shown by the Senate Journal. A replication has been filed to the answer and a demurrer has been filed to the replication, all of which go to that question.

The enrolled bill as filed in the office of Secretary of State, shows by endorsements on its face that it was read in the Senate three times and duly passed. In the absence of any affirmative showing in the Journals that it was not so read, the statute is presumed to have been duly enacted, unless the legislative Journal shows that the mandatory requirements of the constitution for the enactment of statutes was not complied with in the consideration and passage of the particular bill. State v. Carley, 89 Fla. 361, 104 Sou. Rep. 677.

But it is also contended that the Senate Journal of 1929 fails to show the required constitutional yea and nay vote on the final passage of the bill. In this connection there is exhibited to the Court a certified copy of the Journal entries of the House and Senate with reference to the passage of Chapter 14381, which it appears was originally introduced into the House of Representatives as House Bill No. 201 of that session. The Journal entries of the Senate so exhibited do not indicate the second and third reading of the bill nor that a yea and nay vote was taken on the final passage of the bill, although there is included in the certified copy the report of the enrolling committee which shows the enrollment of the act in question and the certificate of the President and Secretary of the Senate that it had been presented to the Governor for his approval after being passed.

But there is no showing whatsoever in either the bound volume of the Senate Journal of 1929 nor in any printed copy of the daily Journal of that session, that the constitutional *yea* and *nay* vote was taken in the Senate on the final passage of the bill. To meet this objection the relators have had prepared and exhibited to the Court, under the hand and seal of the Secretary of State, what is termed a "supplemental errata sheet, 1929 Session," which purports to have been made on October 26, 1931, and filed in the office of Secretary of State by Robert W. Davis, Secretary of the Senate at its 1929 session. It is thereupon suggested that because the 1929 Legislature not only authorized but directed the Chief Clerk of the House and the Secretary of the Senate to correct errors of form and substance in Journals of the respective Houses, and expressly provided that such corrections when so made should be and become a part of the Journals and a record of the proceedings of the legislative session of 1929, that said "supplemental errata sheet" which shows the several readings and final passage of the bill in question by a constitutional *yea* and *nay* vote is sufficient to meet the requirements of the constitution in the respects in which the printed volume of the Journal, as well as the daily printed Journal, are deficient.

House Concurrent Resolution No. 26, which is relied on to have this effect reads as follows:

"Be it Resolved by the House of Representatives, the Senate Concurring:

That the Chief Clerk of the House of Representatives and the Secretary of the Senate be, and they are hereby authorized and directed to correct and revise the respective Journals of the Senate and the House of Representatives for the last three days of the legislative session to the end, that the said Journals as finally incorporated into the volumes may present a truthful and accurate account of the proceedings of the two houses. And be it further

RESOLVED by the House of Representatives, the Senate concurring, That the Chief Clerk of the House of Representatives and the Secretary of the Senate, be and they are hereby further authorized and directed to prepare and cause to be printed with the bound journals of the respective houses, errata sheets, which shall note any errors of form and substance in the said bound journals covering the period of the entire session of 1929, and that the said errata sheet when so made, attached and printed in connection with the bound journals shall be and become a part thereof as a record of the history and proceedings of the legislative session of 1929.'' . .''

Whatever may be the constitutional power of the Legislature to pass a resolution of the kind just referred to, and thereby confer upon the Clerk of the House of Representatives and the Secretary of the Senate, the authority to make corrections and supply omissions in legislative journals after the session of the Legislature has adjourned, it is plain that the resolution in question cannot support the authority of the Secretary of the Senate to make such corrections and supply such omissions in October, 1931, which is more than two years after the 1929 session adjourned. Furthermore, the resolution itself does not purport to give any such authority to the Secretary of the Senate. The authority given is that the Secretary of the Senate be authorized and directed to prepare and cause to be *printed* with the bound Journals of the respective Houses errata sheets which shall note any errors in form or substance in the bound Journals covering the period of the entire session of 1929. The resolution further provides that only when so made, attached and printed *in connection with the bound Journals,* shall the errata sheet be and become a part of the history and proceedings of the legislative session of 1929. There is no question in this case but that the ''supplemental errata sheet'' which was prepared and filed by the Secretary of the Senate in October, 1931, was never made, attached and printed in connection with the bound

Journals of the session of 1929, and therefore the act of the Secretary of the Senate was beyond the terms of the authority conferred by the resolution itself, assuming it to be a proper exercise of the power of the Legislature in the premises, a point which we do not now decide.

The validity of Chapter 14381, Acts of 1929, the constitutional passage of which is denied by the respondents, must stand or fall upon the showing made by the Journals of the 1929 session, which this Court is authorized to consider.

In testing the question of whether any act of the Legislature was passed in conformity with the requirements of the constitution, the Journals of the Houses of the Legislature will be examined; and if they furnish conclusive evidence that any bill was not passed in a constitutional manner, it cannot be recognized as a law. Under constitutional requirements that Journals of the proceedings of the legislative bodies shall be kept and published, where the Journal entries as to the legislative proceedings are explicit and conflict with legislative acts regularly authenticated, the Journals are superior and the courts will be governed by the Journals as to matters clearly, explicitly and affirmatively shown thereby. The daily printed pamphlets which contain the record of the proceedings of each House of the Legislature are the *Journals* of the respective Houses contemplated by the Constitution, of which this Court will take judicial notice.

Journals of the Houses of the Legislature are public records which prove their authenticity, being kept in virtue of a provision of law. In determining the validity of a statute found upon the books, where it is attacked upon the ground that the constitutional requirements were not observed in its passage through the Legislature, it is the duty of the Court to take notice that the Senate and House of Representatives caused the records of the proceedings to be published daily in pamphlet form and to be distributed

generally throughout the State. And where the validity of a statute is attacked on the ground that the constitutional requirements of a *yea* and *nay* vote showing its passage was not obeyed, it is our duty to take judicial notice of these daily journals to satisfy ourselves about what actually transpired in the Legislature in the passage of the Act. Amos v. Mosely, 74 Fla. 555, 77 Sou. Rep. 619.

In the absence of any controversy as to what the daily legislative Journals (which are printed and distributed each day) disclose, the courts are bound to presume that the printed and bound journals of the Legislature prepared under Section 1983 and 1986 C. G. L., 1307 and 1310 R. G. S., comport with the daily Journals, and to consider that such bound Journals are secondary evidence of what the daily Journals may have contained, at least in the absence of any showing that there is a difference between the printed and bound Journals and the printed daily Journals. No such difference appears in this case.

On the contrary, giving full force and effect to the "supplemental errata sheet, 1929 session" prepared and signed by Mr. Davis, the Secretary of the Senate, it affirmatively appears that in the haste and confusion of the session of the Senate at which this particular bill was supposed to have passed, certain errors were made, both in commission and omission, in recording the proceedings of the Senate. That among these errors is the omission from the Journal of proper reference to the passage of House Bill No. 201, which later became Chapter 14381, Acts of 1929.

Taking into consideration the irregular and haphazard way in which so-called "local" bills are hastily considered and passed in both branches of the Legislature, the error of the Secretary of the Senate in failing to correctly record the proceedings with reference to this particular bill is no doubt excusable, but at the same time the Court is bound by the requirements of the constitution that where the *yea* and *nay* vote on the final passage of the bill is not shown

on the Journals, that such act must be held not to have constitutionally passed the legislative body. Section 17 of Article III of the Constitution not only requires a vote on a final passage of every bill or joint resolution to be taken in Legislature, but requires that vote to be entered on the Journals of each House. This reference to ''Journals'' means the *record* of the proceedings of each House as it is daily made and published in pamphlet form and placed each morning upon the desks of the members for correction and approval. See Amos vs. Mosely, 74 Fla. 555, 77 Sou. Rep. 619.

The burden of showing that the act which has been duly signed by the presiding officers of each House, and by the Secretary of the Senate and House of Representatives, and approved by the Governor, as shown by the record of official acts of the legislative department such as are required to be kept by the Secretary of State under Section 21 of Article IV of the Constitution, is upon the respondents who assert that the Act did not pass in the manner prescribed by the Constitution. This burden has been met by the showing that neither the daily Journal made and published in pamphlet form and placed each morning upon the desks of the members for correction and approval, nor the bound copies of the Journals of the Senate for 1929, show that the bill is question passed pursuant to a constitutional *yea* and *nay* vote duly taken and recorded on the Senate Journals.

The ''supplemental errata sheet'' prepared and filed by the Secretary of the Senate on October 26, 1931, cannot be considered as constitutionally sufficient to supply the omission of the *yea* and *nay* vote from the Senate Journal of April 27, 1929, because it is neither primary nor secondary evidence of the daily proceedings of the session of the Senate held on April 27, 1929. That being true, it is affirmatively shown that Chapter 14381, Acts of 1929, never constitutionally passed the Senate and hence never became

a valid law of the State, although it is found in the archives of the Secretary of State's office duly enrolled and signed as a statute.

A writ of mandamus is issued only to require the performance of a plain official duty on the part of respondents. It is issued to require the person to whom it is directed to perform some act which the law enjoins as a duty, and it confers no power and creates no duty of itself. State v. Wilson, 123 Ala. 259, 26 Sou. Rep. 482, 45 L. R. A. 772; State v. Lehman, 100 Fla. 1313, 131 Sou. Rep. 533. In this case the duty sought to be compelled is an alleged statutory duty and the statute under which it is claimed to arise is Chapter 14381, Acts of 1929. If said Chapter never became a statute, the duty to comply with it has never devolved upon the respondents, who are entitled to raise the question either by motion to quash the alternative writ or by their return.

It follows from what we have said that Chapter 14381 never became a law and is unenforceable. The return demonstrating that fact should therefore be held sufficient and the alternative writ quashed and the proceedings dismissed, and it is so ordered. See State ex rel. Gillespie, vs. Carlton, Governor; 103 Fla. 810, 138 Sou. Rep. 612.

Alternative writ of mandamus quashed. Proceedings dismissed.

WHITFIELD, P.J. AND TERRELL, J., concur.

BUFORD, C.J. AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.