LUCILE H. LOTT, *et vir*, v. CITY OF ORLANDO, S. Y. WAY, G. WAYNE GRAY, W. KENNETH MILLER, COLIN MURCHISON and FRANK REED, as and constituting the City Council of City of Orlando; THE HOUSING AUTHORITY OF THE CITY OF ORLANDO; and GEORGE F. BRASS, MELVILLE JOHNSON, WALTON REX, A. M. ROBINSON and PHIL SLEMONS, as and constituting the members of the Housing Authority of the City of Orlando.

196 So. 313.
Opinion Filed September 26, 1939
Rehearing Denied June 10, 1940.

An Appeal from the Circuit Court for Orange County, M. B. Smith and Frank A. Smith, Judges.

*Horrell & Horrell,* for Appellants.

*Campbell Thornal* and *Robert T. Anderson,* for Appellees.

CHAPMAN, J.—On the 13th day of September, 1938, Lucile H. Lott filed her bill of complaint in the Circuit Court of Orange County, Florida, and alleged that she owned real property, both homestead and non homestead, situated in the City of Orlando, Florida, and paid taxes thereon to the City of Orlando to help defray its said operating expenses; that the City Council, under Chapter 17981, Laws of Florida, Acts of 1937, determined that unsanitary and unsafe dwelling accommodations existed in the City of Orlando and families of low income could not afford to pay the existing rentals and appropriated $500.00 to defray the expense of a housing authority for the first year of its existence, and named certain individuals as members of the housing authority of said city, and at a subsequent date, appropriated additional sums of money to the housing authority.

On the 2nd day of September, 1938, the City of Orlando, through its city council, undertook to obligate the City to perform two agreements denominated by it as: (a) Equivalent Elimination Agreement, and (b) Cooperation Agreement. The Equivalent Elimination Agreement

bound the city to eliminate unsafe and unsanitary dwelling units and to construct a similar number of new units not exceeding 135 to be used as low renting projects. The Cooperation Agreement obligated the city to furnish the housing authority, for the tenants thereof, municipal services and facilities without cost or charge to other residents or inhabitants of the city, inclusive of streets, roads and alleys within, adjacent to or traversing each project. Other allegations of pledged corporate functions incident to the carrying out of all the provisions of Chapter 17981 appeared in the bill.

It is alleged that the houses when completed would be occupied by negro families of small income; that sufficient housing facilities for these negro families now exists in Orlando, and the result would be that these families will move from privately owned darkey residential districts of the city to the newly constructed houses and there will be a surplus of low cost housing facilities in Orlando, and the plaintiff will be taxed to pay the costs incident to their construction and maintenance, and similar property will be taxed, remain vacant and no income will be derived through private ownership.

It is next contended that the housing project is not a public purpose and the low cost houses, under the provisions of the Act, may be sold and the ownership and possession fall into private hands; that Chapter 17982, Laws of Florida, Acts of 1937, grants to municipalities the power to purchase or invest in the debentures of the housing authority, and for this reason the entire Act was unconstitutional; that the city is obligated by the Cooperation Agreement with the housing authority to construct low rent houses on lands situated beyond the territorial limits of the City of Orlando and for this reason Chapter 17981, *supra,* is unconstitutional; that the expenditure of funds by the City of

342

Orlando for the maintenance of benefits under the obligation, *supra,* for the benefit of the housing authority is *ultra vires* and beyond the constitutional power of said city and that the undertakings of the City of Orlando with the housing authority constitutes the taking of property without due process of law which is prohibited by the State and Federal Constitutions.

The prayer of the bill of complaint is for a restraining order against the City of Orlando, viz.: (a) restraining the city from making contributions to the housing authority; (b) restraining the City of Orlando from complying with the Cooperation Agreement; (c) restraining the City of Orlando from complying with the Equivalent Elimination Agreement; (d) restraining the furnishing of services of officers by the city to the housing authority; (e) other allegations in the prayer appear but are unnecessary to be recited for the disposition of this case.

An application was made for a temporary restraining order and the lower court on the 16th day of September, 1938, entered an order denying the same. The City Council of the City of Orlando and the Housing Authority of the City of Orlando, and the Commissioners of the Housing Authority of said city each filed motions to dismiss the bill of complaint on the common ground that the bill of complaint contained no equity, and the same was on the 9th day of December, 1938, heard in the lower court and an order was made and entered sustaining said motions to dismiss on the ground that there was no equity in the bill of complaint, and the order was bottomed on the case of Marvin v. Housing Authority of Jacksonville, 133 Fla. 590, 183 So. 145. From said order an appeal has been perfected to this Court.

One of the first questions to be decided is whether or not the action of the City Council of Orlando in creating a

Housing Authority for the City of Orlando for people of low income is a public purpose. Several authorities from other jurisdictions are cited to sustain their contention. This Court is not interested in the motive and wisdom or policy of legislation, as these prerogatives are to be exercised under our system of government by the Legislature. The Legislature, by the enactment of Chapter 17981, *supra,* declared that there was a shortage of sanitary dwellings available for persons of low income and that under the police power of the state it was necessary in preventing crime and the spread of disease, thereby affecting the health, safety, morals and welfare of the residents of Florida; that the slums situated in the different areas of Florida, can be made safe and sanitary by the construction of houses to be occupied by persons of low income and that such was necessary for the public welfare of the State of Florida. A public purpose has for its objective the promotion of the public health, safety, morals, welfare, security, prosperity and contentment of all the inhabitants or residents within a given political division. See Marvin v. Housing Authority of Jacksonville, 133 Fla. 590, 183 So. 145. There is no merit in this contention.

It is next contended that the so called slums clearance project, if a public purpose, is a responsibility to be administered by the county rather than the municipality. In support of this contention Section 3 of Article XIII of the Constitution of Florida and other authorities are cited. We find no fault with these authorities. It is true that the Constitution and Statute make provisions for certain indigents in Florida, but the method therein prescribed is not the only approach to these social security problems. The responsibility of showing error rests with the appellant and a presumption exists as a matter of law as to the correct-

ness of the ruling of the lower court. Counsel for appellant have failed to show error on the record.

It is next contended that Chapter 17981, *supra,* is unconstitutional and void because it violates the principle of equality and uniformity of taxation. That the area of the operation of the housing authority is extra-territorial in scope as it applies to the City of Orlando and money is unlawfully collected from the property owners within the incorporate limits of the City of Orlando and the housing authority property is located beyond the city limits of Orlando. The area in which a housing authority might operate is provided by Subsection (f) Section of Chapter 17981, viz.:

"(f) 'Area of operation': (1) in the case of a housing authority of a city having a population of less than 25,000, shall include such city and the area within five miles of the territorial boundaries thereof; and (2) in the case of a housing authority of a city having a population of 25,000 or more shall include such city and the area within ten miles from the territorial boundaries thereof; provided, however, that the area of operation of a housing authority of any city shall not include any area which lies within the territorial boundaries of some other city as herein defined."

We have examined the authorities cited by counsel to support their contention that Chapter 17981 violates the principle of equality and uniformity of taxation prescribed by Sections 1 and 5 of Article IX of the Constitution. It cannot be overlooked that under the police power of a state broad latitude is allowed in the disbursement of public funds for the prevention and punishment of crime and the promotion of the public health, general welfare and safety of the people. The expenditures of the taxpayers' money is for a public purpose as contemplated by Section 5 of Article IX, *supra.*

It is next contended that the Equivalent Elimination Agreement and the Cooperation Agreement between the City of Orlando and the housing authority is *ultra vires*. It is true that the bill of complaint alleges the invalidity of these agreements, but copies of these contracts have not been placed in the record. It is possible that these agreements were before the lower court at the time of the entry of the order appealed from. All presumptions exist in an appellate court that the judgment of the lower court is correct and one who complains of error must make the same to appear. See Britt v. State, 88 Fla. 482, 102 So. 761; State v. Merritt, 86 Fla. 164; 99 So. 230; Hoodless v. Jernigan, 51 Fla. 211, 41 So. 194; Clements v. State, 51 Fla. 6, 40 So. 432; Stover v. Stovall, 103 Fla. 284, 137 So. 249.

Courts of other jurisdictions have passed upon and upheld statutes similar to the statutes here involved. See Edwards v. Housing Authority of the City of Muncie (Ind.) 19 N. E. (2nd) 741; Doran v. Philadelphia Housing Authority, 331 Pa. St. 209, 200 Atl. 834; Krause v. Peoria Housing Authority, 370 Ill. 356, 19 N. E. (2nd) 193; McNulty v. Owens, 188 S. C. 377, 199 S. E. 425; Knoxville Housing Authority v. City of Knoxville, (Tenn.), 123 S. W. (2nd) 1085; Rutherford v. City of Great Falls, 107 Mont. 512, 86 Pac. (2nd) 656. The housing authority of the city cannot control or exercise the municipal authority of the city within its corporate charter limitations.

The judgment appealed from is hereby affirmed.

WHITFIELD, P. J., and BUFORD, J., concur.

TERRELL, C. J., dissents.

BROWN, J., dissents in part.

THOMAS, J., disqualified.

BROWN, J. (dissenting in part).—Several important questions are raised in this case that were not raised specifically

or considered in the case of Marvin v. Housing Authority of Jacksonville, 133 Fla. 590, 183 So. 145. Appellants, in their statement of questions involved set forth among others the following questions:

"*First Question:* Are Chapters 17981 and 17982, Laws of Florida, 1937, in so far as they purport to authorize municipalities of the State of Florida to establish Housing Authorities and to expend funds and services in aid of such Housing Authorities, in conflict with and in violation of Art. IX, Sec. 5, Constitution of Florida, which provides that the Legislature of the State of Florida shall authorize the several counties and incorporated cities or towns in the State to assess and impose taxes for county and municipal purposes and for no other purposes, and in conflict with Section 10 of Article IX of the Constitution of Florida which provides that the Legislature shall not authorize any county, city, borough, township or incorporated district to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual?

"This question was answered by the court below in the negative.

"*Second Question:* Are Chapters 17981 and 17982, Laws of Florida, 1937, in so far as they purport to authorize municipalities of the State of Florida to establish Housing Authorities and to expend funds and services in aid of such Housing Authorities, in conflict with and in violation of Article XIII, Section 3, Constitution of Florida, which provides that the respective counties of the State shall provide in the manner prescribed by law for those of the inhabitants that, by reason of age, infirmity, or misfortune may have claims upon the aid and sympathy of society?

"This question was answered by the Court below in the negative.

"*Fourth Question:* May a municipality lawfully contract with a local Housing Authority to furnish, without cost or charge to said Housing Authority or the tenants thereof, certain municipal facilities and services including but not limited to fire, police and health protection services, garbage, trash and ash disposal, street lighting and street maintenance on public streets within the housing project and the boundaries thereof, and sewer services?

"This question was answered by the court below in the affirmative.

"*Fifth Question:* May a municipality lawfully contract with a local Housing Authority to maintain in good repair and working order any and all municipal utilities and facilities provided by such municipality for the use and benefit of the housing project of said Housing Authority and the tenants thereof?

"This question was answered by the Court below in the affirmative.

"*Sixth Question:* May a municipality lawfully contract with a local Housing Authority to maintain in good repair streets, roads, and alleys which shall be within, adjacent or leading to the boundaries of any housing project of said Housing Authority?

"This question was answered by the court below in the affirmative.

"*Seventh Question:* May a municipality lawfully contract with a local Housing Authority to accept for municipal purposes land which may be owned or acquired by said local Housing Authority and which said local Housing Authority may determine to use for streets and alleys within the boundaries of the housing project of said local Housing

Authority or for the purpose of providing ingress thereto and egress therefrom?

"This question was answered by the court below in the affirmative.

"*Eighth Question:* May a municipality lawfully contract with a local Housing Authority to plan or replan, zone or rezone to an appropriate site and neighborhood classification, any area within said municipality within which any housing project shall be located, to the extent that the Housing Authority finds that such action is necessary in the development of said · housing project, and that such action shall be taken by the municipality within a reasonable time after receipt of a written request therefor from the Housing Authority?

"This question was answered by the court below in the affirmative.

"*Ninth Question:* May a municipality lawfully contract with a local Housing Authority to vacate and close any streets, roads, roadways, alleys, sidewalks or other places located in the area of any housing project or adjacent thereto, to the extent that the Housing Authority finds that such action is necessary in the development of said housing project, and that such action is necessary in the development of said housing project, and that such action shall be taken by the municipality within· a reasonable time after receipt of a written request therefor from the Housing Authority?

"This question was answered by the court below in the affirmative.

"*Tenth Question:* May a municipality lawfully contract with a local Housing Authority to furnish, dedicate, pave, install, grade, or regrade, plan or replan any streets, roads, roadways, alleys, sidewalks, or other places located in the area of any housing project or adjacent thereto and which

the said Housing Authority shall find to be necessary to the development of such project, and that such facilities shall be furnished and such work performed by the municipality within a reasonable time after receipt of a written request therefor from the Housing Authority?

"This question was answered by the court below in the affirmative.

"*Eleventh Question:* May a municipality lawfully contract with a local Housing Authority to make such exceptions from the municipality's building regulations and ordinances as may be found by the Housing Authority to be necessary in the development of the housing projects of the Housing Authority?

"This question was answered by the court below in the affirmative.

"*Twelfth Question:* May a municipality obligate itself by contract with a local Housing Authority to eliminate unsafe or unsanitary dwelling units within the municipality of a number at least equivalent to the number of new dwelling units to be provided in the low-rent housing projects to be undertaken by the Housing Authority not to exceed one hundred thirty-five (135) in number within the municipality, and that for the purpose of such agreement a dwelling unit shall be considered unsafe or unsanitary whenever by reason of dilapidation, faulty arrangement or design, lack of ventilation, light or sanitation, or any combination of those factors, it is detrimental to safety, health, or morals, and further that such elimination of said dwelling units shall occur within one year after the date of the physical completion of the housing project?

"This question was answered by the court below in the affirmative."

The questions thus presented are all serious and import-

ant questions. All of them were in effect answered in the affirmative by the court below. All of these questions have raised serious doubts in my mind as to the validity of these two legislative Acts. But it seems clear to me that the seventh, eighth, ninth, tenth, eleventh and twelfth questions should have been answered by the court below in the negative instead of in the affirmative.

Without taking the time to express my views at length, I direct attention to the following authorities: Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716; State v. Greer, 88 Fla. 249, 102 So. 739; State v. Barnes, 24 Fla. 29, 3 So. 433; Advisory Opinion for Governor, 13 Fla. 687; *In re* Opinion of the Justices, 211 Mass. 624, 98 N. E. 611, 42 L. R. A. N. S. 221; Arkansas-Missouri Power Co. v. City of Rennett, 78 Fed. (2nd) 911; 11 Am. Jur. 1075, 1018-1020, Maxcy v. Mayo, 103 Fla. 552, 139 So. 121; Preface to Tiedemen's Limitations of the Police Power, 61 C. J. 135, Sec. 66; 26 R. C. L. 73, Sec. 51; Cooley on Taxation, 4th Ed., Vol. 1, 663; 26 R. C. L. 72-74; Sec. 5 of Art. IX, Constitution of Florida. The weight of authority in this country is that the discretion to exercise or not to exercise the police power or other purely governmental functions cannot be delegated, nor contracted away, by a municipality; nor can authority to do so be conferred by the Legislature. See 43 C. J., 240-241, 19 R. C. L. 797; 43 C. J. 211, S ec. 213; 44 C. J. 928-929; McQuillin on Munic. Corp., Vol. 3, Sec. 935; 12 C. J. 912, Sec. 423; 11 Am. Jur. 983, Sec. 254; Cooley's Constitutional Limitation, 8th Ed., Vol. 1, page 579; 12 C. J. 1116, Sce. 833; 3 McQuillin Munic. Corp., Sec. 1271-1272; City of Jacksonville v. Ledwith, 26 Fla. 163, 7 So. 885; Florida East Coast Ry. Co. v. City of Miami, 76 Fla. 277, 79 So. 682; State v. St. Poul M. & N. Ry. Co., 208 U. S. 583, 52 L. Ed. 630.

A consideration of these authorities has convinced me

that the so-called "equivalent elimination agreement" and co-operation agreement, as described but not set out in the bill, are clearly *ultra vires* and unconstitutional. A city cannot contract away its governmental or police powers.

I think therefore that the decree of the court below should be reversed.