J. H. HIGBEE, *et al.,* v. HOUSING AUTHORITY OF
JACKSONVILLE, *et al.*

197 So. 479

En Banc

Opinion Filed June 28, 1940

Rehearing Denied August 2, 1940

*J. T. G. Crawford* and *Philip S. May,* for Appellants;
*Julian E. Fant* and *Clarence G. Ashby,* for Appellees;
*George C. Bedell* and *Chester Bedell,* as *Amici Curiae.*

CHAPMAN, J.—On August 29, 1939, J. H. Higbee, R. L. Slauter, Montague Land Company, Josephine F. Bettlini and N. G. Jennerette filed their bill of complaint in the Circuit Court of Duval County, Florida, against the Housing Authority of Jacksonville, the Commissioners of the Housing Authority of Jacksonville, the City of Jacksonville, the United States Housing Authority, and Nathan Straus, as administrator of the United States Housing Authority,

and alleged that plaintiffs were citizens, residents and tax-payers of the City of Jacksonville; owned real property in fee simple situated within a certain described area within the City of Jacksonville, and owned other improved lands located within the City of Jacksonville, and the property is rented to tenants of low incomes.

The bill of complaint consists of some twenty-five paragraphs raising the constitutionality of Chapter 17981 and Chapter 17983, Laws of Florida, Acts of 1937. The prayer of the bill seeks an order or decree holding the aforesaid Acts void and unconstitutional, and, further, that a restraining order or injunction for a number of reasons or grounds be issued against the United States Housing Authority and the Housing Authority of the City of Jacksonville, restraining each of them from proceeding further for the reasons set forth in the bill of complaint. Attached to the bill of complaint, and by appropriate allegations made a part thereof, is a copy of loan contract between the Housing Authority of Jacksonville and the United States Housing Authority and identified as Exhibit "A." Also a copy of the Co-Operative Agreement between the City of Jacksonville and the Housing Authority of Jacksonville is attached and identified as Exhibit "B." Likewise a copy of annual contributions contracts between the Housing Authority of Jacksonville, Florida, and the United States Housing Authority is attached and identified as Exhibit "C;" and a map or plat of the area involved and located within the City of Jacksonville is identified as Exhibit "D."

On October 2, 1939, the Housing Authority of Jacksonville and the named Commissioners thereof filed an answer to the bill of complaint, and paragraph 27 thereof contains pertinent allegations, viz.:

"Further answering said bill of complaint and each and every allegation thereof, these defendants aver that the

property described in paragraph numbered One (1) thereof is commonly known in Jacksonville as 'Hansontown' and is the site of the proposed slum clearance project of the defendant Housing Authority of Jacksonville (Florida), a corporation, which project is the subject matter of this suit, and these defendants aver that said property lies within colored school attendance district X, as the same is shown in the report of the Council of Social Agencies of Jacksonville, Florida; that said described area in said Bill of Complaint is inhabited 100% by negro population; that said school district lies within an area which has a greater concentration of population per city block than any other portion of Jacksonville, and that the property proposed to be acquired for this slum clearance project has the greatest concentration of population per city block in said area; that said inhabitants of said school district X and said described property fall within the group having the highest death rate within the City of Jacksonville, and particularly has it the greatest number of deaths in infant stage, from pellagra, tuberculosis and venereal diseases; that numerically speaking the greatest number of commitments for insanity are issued for inhabitants of said district; that said district falls within the group having the greatest percentage of dependency upon direct relief; that greater numbers of juvenile delinquents are apprehended out of said district than any other; that said district's inhabitants furnish the municipal court with more adult criminal cases per capita for disposition by four times than any other district in Jacksonville; that from the standpoint of education, playgrounds and recreation said district is in the lowest population percentage bracket in Jacksonville.

"These defendants further allege that in 1934 at the suggestion of the Honorable Scott M. Loftin, then President of the American Bar Association, the Jacksonville City

Commission appointed a Crime Justice Commission of fifty-five members, including judges, lawyers, ministers and business and professional men and women of the City of Jacksonville, for the purpose of investigating conditions in Jacksonville in relation to crime. Two years later they sent in their report stating, with reference to the district in which said project is located, among other things:

" 'The housing in this area is uniformly bad in spots. In one portion of this area, called Hansontown, the net cost of municipal services exceeds the net income from taxation by $40,000.00 per year. This is a net loss to the taxpayers as a whole.'

"These defendants allege that said finding by said Crime-Justice Commission is true in fact as of the present time, and that said section called Hansontown will be wiped out by their slum clearance project.

"Said Crime-Justice Commission recommended, among other things:

" 'That the City Planning Board be requested to create permanent sub-committees in those districts where needed to devise ways and means for slum clearance with particular reference to better housing and the ultimate elimination of those places which are commonly recognized as crime breeding.'

"These defendants aver that subsequent to the filing of said report the State Legislature of the State of Florida passed Chapter 17971, Laws of Florida 1937, under which the defendant, Housing Authority, of Jacksonville (Florida), a corporation, was created, and that said Defendant now proposes to eliminate these slums from this area of the City of Jacksonville, Florida, and to replace them with a low-rent housing project thereby effecting a saving to the

taxpayers of said City and reducing the disease and crime in said City."

The Housing Authority, of Jacksonville and the named commissions thereof filed a joint and several motion to dismiss the bill of complaint on some 26 grounds, and one of them was to the effect that the bill of complaint failed to state grounds for equitable relief. On October 2, 1939, the City of Jacksonville filed a motion to dismiss the bill of complaint on nine grounds and one thereof was that the bill of complaint stated no ground for equitable relief against the City of Jacksonville.

On November 8, 1939, the Honorable A. D. McNeill, Circuit Judge, made and entered an order granting or sustaining the two motions to dismiss, and his ruling as stated in his order was bottomed on the case of Marvin as Admr. v. Housing Authority of Jacksonville, 133 Fla. 590, 183 So. 145, and an unreported case of Lott v. City of Orlando, 142 Fla. 338, 196 So. 313.

On November 16, 1939, the plaintiffs below having announced that they would stand by their bill of complaint and refused or declined to amend the same, an order was made and entered dismissing the same, and from said order of dismissal an appeal has been perfected to this Court.

It is first contended that the case of Marvin v. Housing Authority of Jacksonville, 133 Fla. 590, 183 So. 145, cited in the order of dismissal of the lower court is not binding on this Court, because: (a) no justiciable question was presented by the pleading; (b) the entry of the appeal herein was void on its face; (c) this Court was without jurisdiction to enter the order or decree; (d) and for other procedural irregularities the said judgment was void.

The jurisdiction of this Court to decide the case of Marvin v. Housing Authority of Jacksonville, *supra,* on

appeal from the Circuit Court of Duval County, Florida, is authorized by Section 5 of Article 5 of the Constitution of Florida, which provides that the Supreme Court of Florida shall have appellate jurisdiction in all cases at law and in equity originating in the circuit courts and of appeals from the circuit courts in certain enumerated cases. The question as to the appeal therein being void and no justiciable question being presented by the pleading was decided in Marvin v. Housing Authority of Jacksonville, *supra,* adversely to the contention of counsel.

It is well established law that all points adjudicated by an appellate court upon appeal or writ of error become the law of the case and are no longer open to discussion or consideration. See Rudisill v. Tyler, 125 Fla. 154, 169 So. 614; Family Loan Co. v. Smetal Corporation, 123 Fla. 900, 169 So. 48; Utley v. City of St. Petersburg. The law of the case is the question of law decided on appeal to courts of ultimate resort and must govern in the same courts and trial courts and will seldom be reconsidered or reversed. See McGregor v. Provident Trust Co., 119 Fla. 718, 162 So. 323; Lincoln Fire Ins. Co. v. Lillenback, 130 Fla. 635, 178 So. 394.

The grounds or reasons for the unconstitutionality of Chapters 17981 and 17983, *supra,* not presented and not considered or determined by this Court in Marvin v. Housing Authority of Jacksonville, *supra.,* may be considered and determined by this Court in a subsequent suit. See Phifer v. Abbott, 73 Fla. 402, 74 So. 488; Wilder v. Punta Gorda State Bank, 100 Fla. 517, 129 So. 865.

It is next contended that the loan agreement between the Housing Authority of Jacksonville and the United States Housing Authority estimates the cost of the proposed project at $3,067,000.00 and the United States Housing Authority

contracts and agrees to loan $2,510,000.00 and there is no assurance that an additional loan can be had, and if the additional loan cannot be had, then the method of financing resorted to by the Housing Authority of Jacksonville will be to sell its bonds. It is alleged that the Housing Authority of Jacksonville has made no provision or arrangements to raise the (possible) shortage; that it has no property to offer as security for the loan; the present plan of financing is that the United States Housing Authority makes temporary loans to the Housing Authority of Jacksonville, and that this proceeding is in defiance of law and means the expenditure of public funds without authority of law. The brief of appellants fails to cite authorities to support the allegations that public moneys are being expended contrary to law. There is a presumption that officers charged with the administration of the law will fully discharge their duties as the law directs. The answer to this charge is Section 21 of Chapter 17981, *supra,* viz.:

"Section 21. AID FROM FEDERAL GOVERNMENT.—In addition to the powers conferred upon an authority by other provisions of this Act, an authority is empowered to borrow money or accept grants or other financial assistance from the Federal Government for or in aid of any housing project within its area of operation, to take over or lease or manage any housing project or undertaking constructed or owned by the Federal Government, and to these ends, to comply with such conditions and enter into such trust indentures, leases or agreements as may be necessary, convenient or desirable. It is the purpose and intent of this Act to authorize every authority to do any and all things necessary or desirable to secure the financial aid of co-operation of the Federal Government in the undertaking, construction, maintenance or operation of any housing project by such authority."

It is next contended that the United States Housing Authority and the Housing Authority of Jacksonville should be enjoined from the construction of low-cost rental property because similar dwellings have been and are now being constructed by private enterprise at a sum substantially less than the cost of construction under the Housing Authority of Jacksonville. Section 1415 (5), 42 U. S. C. A., provides that the United States Housing Authority shall make loans only for projects *as it finds* are to be undertaken and constructed at an average cost per unit not greater than the average construction cost per unit under private enterprise. The United States Housing Authority advances 90 per cent of the estimated cost of the construction of Housing Authority of Jacksonville. There was no adverse ruling of the lower court entered against the United States Housing Authority.

It is next contended that the agreement between the Housing Authority of Jacksonville and the City of Jacksonville will not be carried out or observed about the elimination of unsafe or unsanitary buildings. It is urged that the City does not have the power to comply with this provision of the agreement and that no plans have been formulated or steps contemplated by the City of Jacksonville to carry out this provision of the agreement. It is not the province of this Court to speculate on what an officer will or will not do concerning his administrative duty, but there is a presumption that he will comply with the law and discharge his official duties.

It is next contended that Chapter 17981, *supra,* contravenes and is in conflict with Article 13, Section III, of the Constitution of Florida adopted November 3, 1936, which is, viz.:

"Section 3. The respective counties of the State shall provide in the manner prescribed by law, for those of the

inhabitants who by reason of age, infirmity, or misfortune, may have claims upon the aid and sympathy of society: * * * ."

The Legislature of Florida, in enacting Chapter 17981, Laws of Florida, Acts of 1937, made legislative findings and declarations of necessity, viz.:

"Section 2. FINDING AND DECLARATION OF NECESSITY.— It is hereby declared:

"(a)   That there exists in the State insanitary or unsafe dwelling accommodations and that persons of low income are forced to reside in such insanitary or unsafe accommodations; that within the State there is a shortage of safe or sanitary dwelling accommodations available at rents which persons of low income can afford and that such persons are forced to occupy overcrowded and congested dwelling accommodations; that the aforesaid conditions cause an increase in the spread of disease and crime and constitute a menace to the health, safety, morals and welfare of the residents of the State and impair economic values; that these conditions necessitate excessive and disproportionate expenditures of public funds for crime prevention and punishment, public health, welfare and safety, fire and accident protection, and other public services and facilities; (b) that slum areas in the State cannot be cleared nor can the shortage of safe and sanitary dwellings for persons of low income be relieved, through the operation of private enterprise, and that the construction of housing projects for persons of low income (as herein defined) would therefore not be competitive with private enterprise; (c) that the clearance, replanning and reconstruction of the areas in which unsanitary or unsafe housing conditions exist and the providing of safe and sanitary dwelling accommodations for persons of low income (including the acquisition by a

housing authority of property to be used for or in connection with housing projects or appurtenant thereto) are exclusively public uses and purposes for which public money may be spent and private property acquired and are governmental functions of public concern; (d) that it is in the public interest that work on projects for such purposes be commenced as soon as possible in order to relieve unemployment which now constitutes an emergency; and the necessity in the public interest for the provisions hereinafter enacted, is hereby declared as a matter of legislative determination."

It is strenuously contended that all the benefits flowing from Chapter 17981 go exclusively to the inhabitants who by reason of age, infirmity or misfortune may have claims upon the aid and sympathy of society as contemplated by Section 3 of Article XIII of the Constitution of Florida as adopted November 3, 1936, as such class or classes are the sole benefactors of the Act, then the burden rests on the respective counties of Florida under the Constitution and the Act therefore is in contravention of and conflicts with the Constitution and is null and void. Brown v. Lakeland, 61 Fla. 508, 54 So. 716; Munroe v. Reeves, 71 Fla. 612, 71 So. 922; State v. Greer, 88 Fla. 249, 102 So. 739, are cited as authority for holding that municipal funds cannot constitutionally be used to aid public schools. We agree fully to all that is said in each of the cited authorities.

The legislative findings and declaration of necessity appearing in Section 2 of the Act contemplate conditions affecting the health, morals, safety, crime, public interest and general welfare and interest of society appearing in the slum of the City of Jacksonville, and if these unhealthy, unsanitary, immoral and breeding places of crime and disease are to be eradicated, the slum must be removed. While a legislative finding is not conclusive on the courts, it is very persuasive. The ends to be obtained by the Act are broader,

deeper and more comprehensive than providing for the class or classes enumerated in Section 3 of Article XIII of the Constitution. While it is true the classes enumerated in Section 3 of Article XIII, *supra,* may become the recipients of benefits flowing from the Act, it cannot be said that the general public is not also benefited. It is a general welfare Act, resting primarily on the police power of the Constitution, providing for the clearing of slum and the construction of low cost houses, thereby removing breeding places for crime and disease, and promoting the health, safety, morals, peace and general welfare of the people.

In the case of Allydonn Realty Corp. v. Holyoke Housing Authority (Mass.), 23 N. E. (2d) 665, the Supreme Judicial Court of Massachusetts had before it a statute similar to the one here involved, and in sustaining the Act against numerous attacks on constitutional grounds and otherwise, the Court said:

"As soon as it is established that the primary purpose of the statute is a public purpose, the various provisions for the creation of housing authorities, selection of the site, cooperation by municipalities, exercise of the right of eminent domain, and exemption from taxation take their appropriate places as legitimate parts of the entire plan. See Graves v. People of State of New York *ex rel.* O'Keefe, 306 U. S. 466, 477, 59 S. Ct. 595, 83 L. Ed., 927, 120 A. L. R. 1466." See Williamson v. Housing Authority of Augusta, 186 Ga. 673, 199 S. E. 47; Dorman v. Philadelphia Housing Authority, 331 Pa. 209, 200 Atl. 840; Rutherford v. City of Great Falls, 108 Mont. 512, 86 Pac. (2d) 656; Spahn v. Stewart, 268 Ky. 97, 103 S. W. (2d) 651; Housing Authority of Los Angeles v. Dockweiler, 14 Cal. (2d) 437, 94 Pac. (2d) 794.

It is next contended that Chapter 17981 contravenes and is in conflict with Section 8 of Article VIII and Section 25 of Article III of the Constitution of Florida.

Section 8 of Article VIII provides that the Legislature shall have power to establish, and to abolish, municipalities, to provide for their government, to prescribe their jurisdiction and powers and to alter and to amend the same at any time. Section 25 of Article III provides that the Legislature shall provide by general law for incorporating such educational, agricultural, mechanical, mining, transportation, mercantile and other useful companies as may be deemed necessary, but it shall not pass any special law on any such subject, and any such special law shall be of no effect.

Counsel has cited a number of authorities to show that Chapter 17981 is a special law. We have carefully examined these authorities and are not satisfied that they are controlling. We have carefully examined cases from other jurisdictions where similar Acts have been passed upon and where many of the questions propounded by appellant, and additional questions, have been considered and the different Acts upheld or sustained. We think full, complete and logical answers can be found to every question raised on this appeal in the following cases, viz.: Marvin v. Housing Authority of Jacksonville, 133 Fla. 590, 183 So. 145; Lott v. City of Orlando, 142 Fla. 338, 196 So. 313; *In Re:* Opinion of the Justices, 235 Ala. 485, 179 So. 535; Williamson v. Housing Authority of Augusta, 186 Ga. 673, 199 S. E. 43; Krause v. Peoria Housing Authority, 370 Ill. 356, 19 N. E. (2d) 193; Edwards v. Housing Authority of City of Muncie (Ind. Supp.), 19 N. E. (2d) 741; State *ex rel.* Porterie v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725; Allydonn Realty Corp. v. Holyoke Housing Authority (Mass.), 23 N. E. (2d) 665; Stokus v. Breen (Mass.), 24 N. E. (2d) 333; *In Re:* Brewster Street Housing Site in City of Detroit (Mich.), 289 N. W. (2d) 493; Laret Investment Co. v. Dickman (Mo.), 134 S. W.

(2d) 65; Rutherford v. City of Great Falls, 107 Mont. 512, 86 Pac. (2d) 656; State *ex rel.* Helena Housing Authority v. City of Helena (Mont.), 90 Pac. (2d) 514; Romano v. Housing Authority of Newark (N. J.), 10 Atl. (2d) 191; New York Housing Authority v. Muller, 270 N. Y. 333, 1 N. E. (2d) 153, 105 A. L. R. 905; Wells v. Housing Authority of Wilmington, 213 N. C. 744, 197 S. E. 693; Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 200 Atl. 834; McNulty v. Owens, 188 S. C. 377, 199 S. E. 425; Knoxville Housing Authority v. City of Knoxville (Tenn.), 123 S. W. (2d) 1085; Chapman v. Huntington, W. Va., Housing Authority (W. Va.), 3 S. E. (2d) 502; Spahn v. Stewart, 268 Ky. 97, 103 S. W. (2d) 651.

In the brief filed by counsel as *amici curiae* certain questions are presented, viz.:

"1. The 'Housing Authorities Law' passed by the Legislature as 'Committee Substitute for House Bill No. 1127,' does not appear by the House Journals to have been signed by the Speaker and Clerk of the House in open session but on the contrary the Journals specifically recorded the signing of House Bill No. 1127 for which the Committee Substitute has been substituted."

"2. The 'Housing Authorities Law' violates Section 27 of Article III of the Florida Constitution requiring that all state and county officers not otherwise provided for by the Constitution shall be elected by the people or appointed by the Governor."

"3. Chapter 19511, Laws of Florida, 1939, is ineffectual to render valid the 'Housing Authorities Law.' "

An examination of the bill of complaint, prayers thereof and Exhibits attached, and the joint and several answer of the Housing Authority of Jacksonville and the Commissioners thereof, and the motions to dismiss filed by the City of Jacksonville and the Housing Authority of Jacksonville,

and other pleadings in the case, fail to disclose where questions 1, 2 and 3 propounded by *amici curiae* are made a part of the transcript or considered in the lower court. The original brief of counsel for appellants omits a discussion thereof and the reply brief of counsel for appellants fails to discuss the three questions propounded by *amici curiae*.

In the case of State *ex rel.* Board of County Commissioners v. Helseth, 104 Fla. 208, 140 So. 655, an original proceeding in mandamus was instituted in this Court for the purpose of determining whether or not Chapter 11128, Acts of 1925, as amended by Chapter 14381, Acts of 1929, Laws of Florida, was passed by the Legislature in accordance with the requirements of Section 17 of Article III of the Constitution, as shown by the Journals. This question was presented as an issue in the mandamus proceeding in which this Court pointed out the burden of proof in settling the controversy. There is no justiciable controversy involved in the record as propounded by *amici curiae*. The rights of *amici curiae* are not affected on this record, neither has counsel for the parties to the cause presented the questions raised *supra*. In Vol. 3, Corpus Juris Secundum, p. 1050, it is said:

"(2) Questioning Constitutionality of Statute an amicus curiae cannot attack the constitutionality of a statute.

"Under the rule stated in the title Constitutional Law par. 76 (12 C. J., p. 760, note 57) that the constitutionality of a statute may not be attacked by one whose rights are not affected by the operation of the statute, an amicus curiae has no right to question the constitutionality of an Act, and the Court will not pass on grounds of invalidity urged by an amicus curiae but not presented by the parties."

We fail to find error in the record, and the order appealed from is hereby affirmed.

WHITFIELD, J., concurs specially.

BUFORD, J., concurs.

THOMAS, J., agrees to affirmance.

TERRELL, C. J., and BROWN, J., dissent.

WHITFIELD, J. (concurring specially).—Though a statute has been adjudicated to be not unconstitutional on its face, yet if the statute or a portion of it so operates as to violate the Constitution, the law affords a remedy. See Hunter v. Owens, 80 Fla. 812, 86 So. 839.

Section 8, Article VIII, Florida Constitution, provides that: "The Legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time, when any municipality shall be abolished, provision shall be made for the protection of its creditors."

In so far as the provisions of Chapters 17981, 17982, 17983, Acts of 1937, are (1) legally covered by the title of the Acts, and (2) are to be applied *for a municipal purpose* within the corporate limits, or within a reasonable area beyond municipal boundaries for a proper municipal purpose to conserve the health, safety and public welfare of the municipality, and (3) the regulations do not in terms or legal effect expressly or impliedly violate any organic law, or (4) do not directly or indirectly operate to violate the terms or intendments of Section 8, Article VIII; Section 5, Article IX; or other provision of controlling Federal or State law, such statutory provisions may, if lawfully applied, operate to accomplish a permissible and duly authorized municipal purpose. Provisions of the statute that are not in accord with the State and Federal Constitutions and controlling Federal statutes, are not within the valid legislative intent and should not be enforced; but the operation of such invalid provisions may be restrained or remedied in

appropriate judicial proceedings by proper parties under Section 4, Declaration of Rights, Florida Constitution.

The validity of particular portions of a statute and the legality of the applications of any portion of a statute may be determined as occasion requires, when the matter has not become *res adjudicata.*

If subdivisions (g) and (h) of Section 8, Chapter 17981, be adjudged to be invalid, they may be regarded as eliminated, and valid portions of the Act applied.

The "commissioners" of the "Authority" may exercise the corporate functions and duties that may be conferred upon them by the statute, subject and subordinate to the superior authority within proper spheres of the municipality and its authorized officials; and such commissioners have no authority to delegate the duties and functions conferred upon them as commissioners. Nor can the "commissioners" have any authority whatever over the municipal officers or over the functions or duties of municipal or other officers. The commissioners may recommend but not command. Nor can a municipality or its officers confer any official function, authority or duty upon such commissioners, except as may be legally authorized by statute. Any arbitrary or unreasonable exercise of the corporate functions and duties conferred upon the commissioners is of no legal binding force or effect, and may be relieved against in due course of legal procedure.

If Section 20, Chapter 17981, Acts of 1937, is not covered by the title of the Act or is otherwise inoperative, it may be regarded as eliminated.

Section 6,. Chapter 17982, cannot legally be so applied as to violate Sections 5 and 10, Article IX, of the Constitution.

The right of eminent domain may be exercised only for proper public purposes; and the property rights of those

whose property is to be condemned should be fully guarded in every way required by controlling organic law. See Section 28, Article XVI, of the Florida Constitution.