LINCOLN FIRE INSURANCE COMPANY OF NEW YORK v. JOHN P. LILLEBACK and A. J. DIAMON, as grantee and assignee of Florida Bank & Trust Company, a corporation, of West Palm Beach, as Trustee of Palm Beach County.

178 So. 394.

Division B.

Opinion Filed January 22, 1938.

*Batchelor & Dyer* and *Earnest & Lewis,* for Plaintiff in Error;

*Boozer & Boozer,* for Defendant in Error.

BROWN, J.—This is the second appearance of this case here; see Lilleback, *et al.,* v. Lincoln Fire Insurance Co. of New York, 120 Fla. 289, 162 So. 866. The action is upon two insurance policies covering a house located in Kelsey City, Florida, which was destroyed by fire on the night of September 5, 1932. Lilleback sued as purchaser of the property insured and Diamon as assignee of Lilleback's vendor. Total loss of $500.00 under each policy was claimed, plus attorney's fees.

The policies sued upon among other things provided: (1) that they shall be void if the interest of the insured be not truly stated therein; (2) that they shall be void if the assured be not the unconditional and sole owner; (3) that they shall be void if any material matter touching the insurance or the subject thereof be misrepresented; (4) if any change in the title or interest of the property be made without the Company's consent endorsed on the policy, such change will invalidate it.

The insurance contracts insured J. P. Lilleback "as purchaser under contract," and the Florida Bank and Trust Co., as trustee for Palm Beach County, Florida. At the first trial of this cause, the Circuit Judge directed a verdict for the defendant, at the conclusion of the evidence and testimony presented by the plaintiff, on the ground that the alleged contract relied on by the plaintiffs was nothing more than an option and was not a contract to purchase. On appeal this Court had before it for consideration the question whether the contract was a contract

of purchase or merely an option. Mr. Justice TERRELL, speaking for the Court, said:

"An examination of the instrument relied on by plaintiff to support his title discloses that when it was executed it was nothing more than an option to purchase. It is unilateral and imposes no obligation on Lilleback other than to pay $100.00 for the option also in addition $50.00 a month during its life with 8 per cent. interest. It was not to be recorded but held until the time of exercising the privilege to purchase expired, which was November 25, 1931. If the purchase was not made by expiration date, it automatically terminated without liability to refund anything paid on it." "It is our view, however, that when the option to purchase was accepted and the optionee commenced making payments on it, it then ripened into a contract to purchase. Frissell v. Nichols, 94 Fla. 403, 114 So. 431. It is shown that the option was accepted and $710.00 of a purchase price of $2000.00 paid on it before the fire. It is also shown that Lilleback took charge of the property promptly and spent considerable money improving it and that he had secured an extension on the time originally allowed for complying with its terms as originally stated. These facts all give support to the appellants' contention and lend support to his claim of title."

"The option to purchase on the part of Lilleback having ripened into a contract to purchase at the time the insurance was written and long before the fire, we fail to find any misrepresentation as to his title of interest in the lands insured. The judgment below is reversed."

At the second trial of the cause, the defendants filed three pleas to the plaintiff's declaration; one alleging that the interest of the insured was not truly stated in the policy; the second plea recited the same facts and alleged that

the policy provision requiring unconditional and sole ownership was breached; another plea filed by the defendant Insurance Company was "that the fire in the declaration mentioned was caused by the voluntary acts or procurement of the plaintiff Lilleback." The plaintiff filed a replication denying the allegation that there was no purchase contract and that the plaintiff Lilleback set fire to the house. The cause was tried on these issues and after hearing the testimony for both plaintiffs and defendant, the jury was charged and brought back a verdict for the defendant. The court set aside the verdict and granted a new trial. From that order this writ of error was sued out.

The questions argued on appeal are:

1. Did the plaintiff truly state his interest in the property when he stated that he was a purchaser under contract?

2. Was the plaintiff the unconditional and sole owner of the property when it is shown by evidence that at the time the insurance was written, plaintiff only had an option to purchase?

3. Was the evidence sufficient to support the plea of arson, and should the court have set aside the verdict in favor of the defendant and granted a new trial?

In the present case the learned trial Judge stated in his order granting a new trial that "the evidence failed to substantiate any of the defenses offered by the defendant and that the ends of justice require a new trial."

We think it is quite clear that the plea alleging that the plaintiff himself by his voluntary act of procurement caused the burning of the building was not substantiated by the evidence to such an extent as would have furnished any satisfactory ground for the verdict in favor of the defendant, considered by itself alone. The real question in

this case is whether the evidence under the other two pleas or either of them was sufficient to sustain the verdict. Those pleas allege that the interest of the insured was not truly stated in the policy, and that the plaintiff was not the sole and' unconditional owner of the property. It is conceded that if the plaintiff, at the time he took out the insurance and at the time of the fire, held the property in question under a contract to purchase, he would be considered as the sole and unconditional owner within the meaning of the policy, under our previous decisions.

Upon the evidence on the former trial as disclosed by the record brought to this court, we held that the evidence was sufficient to show that the contract, though in the form of an option at the time of its execution, had ripened into a contract of purchase at the time the insurance was written and before the fire occurred. In the present action, the evidence and testimony is practically the same as it was on the prior trial. The only substantial difference is that on the second trial there was evidence that $400.00 of the $710.00 which had been paid under the contract represented the purchase price of one of the five lots described in the contract and that the vendor had executed a deed to this lot to one Cormack at plaintiff's request. While the contract between Lilleback, the plaintiff, and his vendor's trustee was a single contract, it gave Lilleback an, option to purchase five separate pieces of property, consisting of certain described lots in Kelsey City, Florida, at and for a total purchase price of $2000.00 the consideration for the option to be paid $100.00 in cash and $50.00 per month up to Nov. 25, 1931. The contract was dated June 20, 1931, and acknowledged receipt of the $100.00 payment, and it provided that if the payments of $50.00 per month were all made up to or before November 25, 1931, Lilleback

might then purchase all five lots at and for said total price of $2000.00. The contract appears to contemplate that the payments required to be made before November 25, 1931, should if duly made, be considered as entitling Lilleback to purchase the five properties for a total price of $2000.00, and contained the following provision:

"IT IS FURTHER AGREED that separate special warranty deed or deed will be made to the above and foregoing property subject to all taxes, liens and assessments upon the property, on the payment to the Florida Bank & Trust Company of Four Hundred ($400.00) Dollars for each and every piece of property conveyed in addition to the one Hundred ($100.00) Dollars heretofore paid for this option and in addition also to the Fifty ($50.00) Dollars per month payable on this option."

Considering the contract as a whole, it does not clearly appear that it was the intent of the parties that it should be a completely separable contract as to each lot, and the particular $400.00 payment, which was actually made before November 25, 1931, was apparently considered by the trial court, as it was by this court on the record of the first trial, as a payment of a part of the purchase price under the contract as an entirety, and that the making of this payment and its acceptance by the vendor along with the other payments that were made by Lilleback, operated to ripen the option contract into a contract of purchase within the meaning of the contract construed as an entirety. While the question presented is one of some difficulty, we are not prepared to say that the construction placed by the lower court upon this contract and the effect of the payments as made and accepted, was erroneous. Indeed, considering the contract as a whole, and the actions of the parties thereunder and with reference thereto as described by the record,

we are inclined to the conclusion that the trial court was correct, and that the additional evidence above referred to with reference to the $400.00 payment and the making of the deed to one of the five pieces of property covered by the contract, did not work such a change in the evidence on the last trial as would take it out of the operation of the "law of the case" rule. That rule means that questions of law decided on appeal to a court of last resort must govern the case in the trial court throughout subsequent stages of proceedings in that case, and will seldom be reconsidered or reversed even though they appear to have been erroneous. McGregor v. Provident Trust Co., 119 Fla. 718, 152 So. 323. In that same case we held that whatever is once established between the same parties in the same case continues to be the law of the case as long as the facts on which such decision was predicated continue to be the facts in the case. So, there being no substantial change in the facts of the case, as we view it, on the second trial, the court below should not be held in error for following the construction of the contract and the law of the case as laid down by this court in its opinion when the case was here on the previous writ of error.

The granting of new trial, as we have frequently held, generally rests within the sound discretion of the trial judge, the exercise of which discretion will not be lightly disturbed by the appellate court. Ordinarily an order granting a new trial will be allowed to stand, unless it is clearly made to appear that it was erroneous and that the verdict as rendered should itself have been allowed to stand.

From a careful examination of the record we are not convinced that the court below abused its discretion in granting a new trial of this case.

Affirmed.

WHITFIELD, P. J., and CHAPMAN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.