**FLORIDA COASTAL THEATRES, INC., a corporation, v. SARA BELFLOWER, joined by her husband, CARL BELFLOWER, and CARL BELFLOWER.**

32 So. 2nd) 738 June Term, 1947
November 21, 1947 En Banc

742

*Harry T. Gray, Marks, Marks, Holt, Gray & Yates,* for appellant.

*Laura H. Hyde,* for appellee.

BUFORD, J.:

Appeal brings for review order granting new trial in favor of a defendant in a case where plaintiff sued for damage alleged to have resulted from a fall suffered in defendant's theatre building while plaintiff was a pay patron of such theatre. It was alleged that the fall was caused by conditions alleged as follows: "that the defendant was then and there guilty of carelessness and negligence in the premises, in this, to-wit: that the defendant then and there carelessly and negligently allowed and permitted the said premises to be unsafe in the following particulars, that said row of seats were located on an elevation approximately eight inches higher than the aisle at the end of said row of seats, that there was a steep step at or near the end of said row of seats in an unexpected position and in a dark place, that the riser to said step was painted a light cream color, causing said riser to show up when the theatre was in a darkened condition and thereby calling the attention of patrons entering said row of

seats from said aisle to said step up to said elevation, that the tread of said step to said row of seats on said elevation was of concrete, or of some material similar to concrete, and of a dark gray color, that said elevation was constructed of concrete or of some material similar to concrete and of a dark gray color, that the edge of said step from said aisle to said elevation was worn, slippery and defective and in an unsafe condition and of a dark gray color, that the lighting facilities thereabouts were insufficient to disclose to patrons leaving said row of seats on said elevation the dark gray tread of said step down to said aisle, that the lighting facilities thereabouts were insufficient to disclose to patrons leaving said row of seats on said elevation the worn, slippery and defective condition of the edge of said step down from said elevation to said aisle, that it was the duty of the defendant to provide and maintain a reasonably safe place and adequate lighting facilities, that the defendant did not provide and maintain a reasonably safe place and adequate lighting facilities, but on the contrary carelessly and negligently failed to provide and maintain a reasonably safe place and adequate lighting facilities, all of which the defendant knew, or in the exercise of ordinary care, would have known, that after witnessing the performance the plaintiff commenced to leave said theatre, passing from said row of seats on said elevation toward said aisle, that by reason of the insufficient lighting facilities thereabouts, plaintiff, being unable to observe the unexpected position of said step and unable to observe the dark gray tread of said step was unable to observe the worn, slippery, defective and unsafe condition of said step, was caused to and did slip and fall, that by reason of the premises said plaintiff was painfully, seriously and permanently injured," etc. etc.

So it was necessary for the plaintiff to prove that the material allegations of the declaration as to the condition of the steps and elevations and to prove that such condition was known to, or should have been known to, the defendant. One way properly to prove that the alleged dangerous condition of the elevations and steps existed and was known, or should have been known, to the defendant was to prove that either the plaintiff or other persons, because of such conditions, had

stumbled or fallen at that place at a time before this fall occurred. If such had happened at that place on previous occasions, and under like circumstances, then the defendant would be presumed to know that such condition existed. Without the proof of such facts or other facts of similar import, the plaintiff could not recover.

During the progress of the trial Robert Tanner was on the stand as a witness in behalf of the defendant and he testified that he made an investigation of the place where the fall occurred immediately after the fall and testified that the ushers in the theatre were required to investigate immediately after any fall occurred, and on cross examination the following occurred:

"Q. How many of those falls did you investigate while you were there?

"Mr. Gray: Just a minute, if the Court please. We objected to that yesterday, and you sustained the objection.

"Mr. Teate: He hasn't sustained any objection like that at all. The witness has brought out the very point himself on direct examination about every accident, that they investigate it immediately.

"The Court: I think it would be error to let the number of falls to go in this case. I don't want to make any mistakes. Why do you think that is relevant?

"Mr. Teate: Because it shows the condition of things around there, and is not direct examination.

"The Court: You will have to show me some law on that, Mr. Teate. In other words, evidence of other falls in that theatre are not competent. I think it would be error to admit it. You don't want me to make a mistake any more than I want to make one.

"Mr. Teate: I don't want to make any mistake there myself, or you or anyone else, but this is not direct. This is cross-examination.

"The Court: Listen here. I have been at this thing a long time, and you haven't got any law, and I have to decide this on genius, general knowledge and information. The objection is sustained. I think it would be error to admit it.

"Mr. Teate: May I state this—?

"The Court: No, I don't want to make error like that and waste everybody's time.

"Mr. Gray: I have no objection to his asking this witness if he knows of any other person that fell on that step, but he can't go into the whole theatre.

"The Court: I don't think a fall on that step would be competent. I am basing that on my experience of some forty years in this courtroom, and I know I am right. I have been around this courtroom forty years, and I know I am right about that. Go ahead. The way I feel about these trials is this: I am under a deep and binding obligation to your client and to the defendant and to you and the jury not to make any errors.

"Mr. Teate: I understand that, Your Honor, and I don't want you to think I am arguing with the Court.

"The Court: If I make a mistake in one of these cases everything has gone for nothing.

"Mr. Teate: Your Honor, but the witness said, out of his own mouth yesterday afternoon about what they did after every accident, and that was the reason I asked this question. That was his testimony.

"Mr. Gray: What has that to do with this case?

"Mr. Gray: You opened it up.

"Mr. Gray: Suppose I said I had ice water for breakfast.

"The Court: No, I don't think the Court is making any error at all, because that is not cross-examination. I would rather be down there where you are than up here. You go on with this one. You are having a better time than I am."

Prior to this occurrence when Mrs. Beulah Baker was on the stand as a witness for the plaintiff, the following occurred:

"Q. Mrs. Baker, you say that you had been in the same picture show before in that same row?

"A. Yes sir.

"Q. Had you ever fallen in the same place before?

"Mr. Gray: We object, if the Court please, as being irrelevant and immaterial.

"The Court: I don't think that is a proper question.

Mr. Teate: All right, sir. You may come down, ma'am."

Now it will be noted that although counsel for defendant during the above mentioned examination of Mr. Tanner, said to the Court:

"I have no objection to his asking this witness if he knows any other persons that fell on that step."

The court was adamant in his holding that such evidence was not admissible, because the Court said: "I don't think a fall on that step would be competent.—I know I am right."

The exclusion of such testimony was a fundamental error and it appears that the Court at that time was laboring under the fixed view that such evidence was inadmissible.

It is seldom that proof of material allegations may be elicited by a single question. So, if the plaintiff intended to prove that a dangerous condition existed at that place and intended to prove that condition by showing that others had fallen at that place because of those conditions, it would first be necessary to prove that the fall or falls had occurred, and when the plaintiff was precluded from showing this, such ruling constituted fundamental error.

The 10th ground of the motion for new trial is:

"The court erred in refusing to permit the plaintiffs to cross-examine the witness Robert Tanner on the question of other accidents because it affirmatively appears from the record that the witness testified on direct with reference to other accidents permitting the plaintiffs to cross-examine, which the Court refused."

In ruling on the motion for new trial, the Court said:

"This Court erred in refusing to permit plaintiffs to cross examine witness Robert Tanner on the question of other accidents as set forth in the tenth ground of said motion. In addition the witness Beulah Baker was put on the witness stand by plaintiff and this question was asked her: 'Q. Had you ever fallen in the same place before?' Counsel for defendant ob-

jected on the ground that the question was irrelevant and immaterial. The Court sustained the objection. The undersigned Judge tried this case and considers that he made two errors warranting the granting of a new trial, so the new trial is granted."

No one can know better than the trial judge what he held and intended to hold in excluding the proffered testimony and the court has said in his order granting the new trial, "The undersigned judge tried this case and considers that he made two errors warranting the granting of a new trial, so the new trial is granted." This shows that the court then realized that by his ruling he had denied the plaintiff a legal right to introduce material evidence tending to prove the allegations of the declaration.

There can be no question that a trial court, if he realizes that he has committed a fundamental error in the trial of the cause which deprives either party of the fundamental right, has the power ex mero motu to grant a new trial.

Trial courts have a liberal discretion in granting new trials. See Lafayette Fires Ins. Co. v. Camnitz, 111 Fla. 556, 149 So. 653; Phillips v. Garrett, 109 Fla. 435, 147 Fla. 857; Miami v. Bopp, 117 Fla. 532, 158 So. 89, 97 A.L.R. 1035; Atlantic Coast Line R. Co. v. McIlwaine, 121 Fla. 78, 163 So. 496.

The granting of a new trial resting primarily in the sound legal discretion of the trial court (Fla. Dairies Co. v. Ward, 131 Fla. 764, 178 So. 906) and his determination will not lightly be disturbed. See Lincoln Fire Ins. Co. v. Littleback, 130 Fla. 635, 178 So. 394. To warrant the appellate court in reversing an order granting a new trial it must clearly appear that there has been an abuse of sound judicial discretion. Tidewater Const. Co. v. Monroe County, 107 Fla. 648, 146 So. 209; Miami v. Bopp, 117 Fla. 532, 158 So. 89; 97 A.L.R. 1035; Gibson v. Lehde, 128 Fla. 703, 175 So. 726.

For the reasons stated, the order granting new trial is affirmed.

So ordered.

TERRELL, ADAMS, SEBRING and BARNS, JJ., concur.

Thomas, C. J., and CHAPMAN, J., dissent.