**FLORIDA POWER & LIGHT COMPANY**, a corporation, v. **JOHN E. HARGROVE.**

35 So. (2nd) 1                                             January Term, 1948
April 27, 1948                                                Division A
Rehearing denied June 2, 1948

406

McKay, Dixon, DeJarnette & Bradford, for appellant.
Perry A. Nichols, for appellee.

TERRELL, J.:

The Florida Power and Light Company contracted with Midland Construction Company to repair and replace worn out or damaged equipment, such as poles, crossarms, insulators, power lines, transformers, lightning arresters, braces and fuses. Appellee was employed by Midland Construction Company to assist in making repairs and replacements, and while working on a pole and crossarm, along which a power line charged with 7620 volts was strung, he came in contact with the energized metal brace and was severely burned. He sued appellant in an action at law, grounded on negligence, and recovered a judgment for $50,000.00. We are urged to review and reverse that judgment.

The main ground relied on for reversal was the refusal of the trial court to grant defendant's motion for directed verdict, because of the uncontradicted evidence supporting its third plea as follows: "That at the time and place described in plaintiff's declaration, the plaintiff was employed and engaged as a workman to assist in repairing and replacing equipment and that he received an injury through a piece of equipment that he was required to replace."

At the time of his injury appellee was being assisted by another workman named Farnsworth. It is not disputed that both were experienced linemen, that they were employed to make repairs and replacements on appellant's equipment, that at the time appellee was injured he and Farnsworth were on the pole some distance above the ground and that appellee was injured by contact with the energized wire. If the injury had been caused by the negligence of appellee or Farnsworth, or by the combined negligence of both, the circumstances might have been such that appellant would not be liable. It does not necessarily follow however, that because appellee was injured with "a piece of equipment that he was required to replace" that his negligence caused the injury. Whose negligence precipitated the injury is the very nub of the controversy. The evidence was in conflict and the jury resolved the conflicts against appellant.

Appellant contends that the line was energized by appellee or Farnsworth or both in releasing the insulator from the crossarm that was defective and was being replaced. Other evidence is to the effect that the crossarm to which the insulator was attached was so defective that the insulator peg had dropped or slipped down so that the insulator was resting on the crossarm. It was also contended that the metal braces supporting the crossarm were improperly attached to the latter, that the improper attachment drew the energized wire too near the metal attachment and caused the injury or that it could have been caused by the tie wires that fasten the energized wire to the insulator, coming in contact with the attachment when released.

Several witnesses who were men of long experience as linemen, testified that the pole on which the injury took place was improperly rigged, in that the metal brace supporting the crossarm was bolted to the metal lightning arrester, that it was never good practice to attach one piece of iron to another when a non-conductor was available. Appellee contends that on account of the pole being improperly rigged and the energized line being improperly attached to the inside of the insulator, it was too close to the energized wire and shorted with the metal lightning arrester. This condition was aggravated

by the fact that the wooden pin which supported the insulator on which the energized line was strung had settled so as to bring the energized line too close to the lightning arrester attachment. Appellee contends that this condition produced a continuous flow of electricity into the crossarm brace and caused his injury.

It is also shown that there was a convenient switch whereby the line could have been de-energized, but the foreman on the job did not open the switch because the men were furnished with "hot sticks" to work the line and were instructed by defendant not to close the switch. All the witnesses were expert linemen. A great deal of the evidence was of highly technical nature and required expert advice and opinion to clarify it. It is admitted that the case could hardly have been presented to the jury without expert opinion.

Epitomized, these were the primary factors given the jury from which they were to determine whose negligence was responsible for appellee's injury, so the issue is not so simple as appellant would have it. Appellant insists that these factors were so obvious that appellee, being an experienced workman, was bound to know them and was accordingly charged with the responsibility to protect himself. We do not agree with this contention. It is shown that appellee was brought to the job from a foreign state. He may have observed that the pole was rigged differently from what the custom was where he had worked, but he was not on notice that it was rigged contrary to approved local practice. These and other factors in the chain of circumstances leading to the injury were unquestionably jury questions.

The second, third, eleventh, twelfth and thirteenth questions have to do with giving or refusal to give certain charges by the trial court. We have examined these questions carefully in the light of the general charge given, and we fail to find any harmful error.

Questions four, five, six, fourteen and fifteen have to do with the admission or the rejection of evidence. These questions have likewise been carefully considered, but in our judgment, they are devoid of harmful error.

Several other questions are raised and have been considered but the only one we deem necessary to treat is the concluding one challenging the judgment as being excessive.

At the time of the accident in which appellee was injured, he was forty-three years of age, in good health and was earning approximately $125.00 per week, or $6,500.00 per year. His life expectancy was twenty-five years. His right hand and arm were so seriously burned that his hand had to be removed. Some weeks later, in order to relieve pain and suffering from his injury, the forearm was removed just below the elbow. There was also a serious burn on the right leg above the knee, five or six inches long, three inches wide and two and one-half inches deep. The latter burn required several skin grafts, the trimming of burnt flesh, a constant cleansing of the burnt area and the overall result was a distinct shock to the nervous system.

Incident to these physical discomforts, the evidence shows constant pain in the "phantom hand," more than four months spent in the hospital, impaired circulation in the right arm and leg, atrophy and loss of the use of the right arm, inability to write and clothe himself, constant embarrassment, loss of earning capacity, permanent disability, and, though injured more than eighteen months before the trial, appellee had not been able to secure employment on account of his disability and lack of training in any other life.

Such was the problem confronting the jury. There is not the slightest intimation that it was prejudiced or that it was influenced by improper motives. All presumptions favor the correctness of the verdict, and since Dade County has what is known as the "blue ribbon jury system," and is credited with selecting juries of a high level of intelligence, the usual presumption would be fortified to that extent. It would be trite to argue that this Court is not authorized peremptorily to set a verdict aside because it would have awarded a different amount. It must be shown to be without justification in the record, and we find no such showing here.

Earning capacity, life expectancy, dependability, what a dollar will buy and provincial economy are the primary factors that actuate a jury in formulating its verdict. It may be

that in years to come this formula will become antiquated and thrown to the discard, but since it is at present the criterion to guide us, we cannot say that the verdict is excessive. It will be considerably reduced when appellee returns his expended compensation and medical expenses to the Workmens Compensation Carrier. When this is done and we take into consideration the fact that appellee had been an experienced line man for twenty-five years, has twenty-five years to go, knows no other trade, has a fourth grade education and will experience many vicissitudes before he is economically re-orientated, he will of necessity, in the years ahead, be forced to spread the butter mighty thin with the amount awarded.

The verdict in a case like this is at best but a feeble attempt to place the injured person back in the shoes he wore before the injury. In many cases, as in this one, it cannot be done. If it were possible to do so, none of us would be willing to step into appellee's shoes and take his judgment with his handicap on condition that he step in our shoes physically normal as we are. The elements that enter into a judgment like this are so diverse that it often requires more of humility than it does of law properly to assess them. The Judge who overlooks the fact that the lineman, the yard man, the plumber and the cook are made of the same common clay that he is, is not equipped to do so.

No error being made to appear the judgment is affirmed.

Affirmed.

THOMAS, C. J., CHAPMAN and SEBRING, JJ., concur.