46 So.2d 396 (1950)
FIRST FEDERAL SAVINGS & LOAN ASS'N OF MIAMI
v.
WYLIE et al.
Supreme Court of Florida, Division B.
May 16, 1950.
Rehearing Denied June 10, 1950.
*397 Blackwell, Walker & Gray, Miami, for appellant.
Nichols, Gaither & Green, and Brown & Dean, Miami, for appellees.
SEBRING, Justice.
Mrs. Mary Wylie was injured as the result of falling on a waxed floor in the public hallway or corridor of an office building owned and occupied by First Federal Savings and Loan Association of Miami. She and her husband sued the owner of the building and were awarded damages. The owner has appealed from the judgment.
The single issue presented at the trial was whether the owner of the building had "negligently and carelessly maintained the floor of the hallway of the second floor of said building by permitting said floor to become and to remain in a condition that was not reasonably safe to accommodate the plaintiff," which said condition "was known to the defendant, or by the exercise of reasonable care and diligence should have been known to the defendant but * * * was not known to the plaintiff"; and if it had been guilty of such negligent conduct, whether the plaintiff was guilty of contributory negligence in "failing to observe the condition of the said hallway", and whether "by using the floor of said hallway", the condition of which "was plainly observable" by the use of ordinary care, the plaintiff "assumed the risk of her own injury."
The first contention made by the appellant on this appeal is that the trial court committed reversible error in refusing to sustain a demurrer to the count of the declaration *398 presenting this issue and in refusing to grant a motion for a compulsory amendment to the count.
While the count upon which the parties went to trial was not as specific in its particulars as might have been, we are unable to say that the trial court was in error in refusing to sustain the demurrer. The alleged negligent act which constituted the basis for the suit was one of commission, not one of omission; the charge being that the defendant "negligently and carelessly maintained the floor" whereby the same became unsafe for the accommodation of pedestrian traffic. Compare Kasanof v. Embry-Riddle Co., 157 Fla. 677, 26 So.2d 889. It was not necessary under the theory of the pleading for the plaintiff to have alleged actual knowledge of the condition of the floor on the part of the defendant, for the owner of public premises who expressly or impliedly invites persons to come upon the premises for lawful business purposes is charged with the duty of using ordinary and reasonable care to maintain the premises in a reasonably safe condition for their use, and will be held liable for derelictions in this respect of which he knew or by the exercise of ordinary and reasonable care should have known in time to have remedied the situation, or to have given warning of danger. Florida Coastal Theatres v. Belflower, 159 Fla. 741, 32 So.2d 738.
As to the refusal of the trial court to grant the motion for compulsory amendment, it is the rule that a motion for compulsory amendment of a pleading should not be granted unless the pleading is so informal or defective that it will tend to prejudice, embarrass or delay the adverse party in the fair trial of the action. See Florida Common Law Practice, Crandall Sec. 62. From an inspection of the record, it is impossible to say that the pleading was wholly defective, that the defendant was prejudiced, embarrassed or delayed in the trial of the cause, or that it ever suffered any inconvenience or was kept in doubt as to the nature of the charge for which it was finally required to answer, by reason of the manner in which the plaintiff framed her pleadings.
A second contention made by the appellant is that the plaintiff below was guilty of contributory negligence in "failing to observe the condition of the said hallway" in which she sustained her injury and hence should be barred from recovery. The burden of proving contributory negligence in every case is upon the defendant and the credibility and weight to be attached to the evidence offered is a question for the jury. We fail to find any evidence presented by the defendant which, when weighed against the evidence adduced by the plaintiff, would have required a finding in favor of the defendant on the issue of contributory negligence. As a matter of law, the plaintiff had the right to expect that the corridor to which she went by implied invitation to transact business would be in a reasonably safe condition for her use, and unless there had been something in the apparent condition of the floor to have placed her on notice to the contrary (which there was not) she would not have been guilty of contributory negligence merely by reason of the fact that she failed "to observe the condition of said hallway"  for, as established by the reported cases, "It is not contributory negligence to fail to look out for danger when there is no reason to apprehend any." J.G. Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45, 47, Ann. Cas. 1913C, 564; Crosby v. Donaldson, 95 Fla. 365, 116 So. 231; Standard Oil Co. v. Burleson, 5 Cir., 117 F.2d 412.
With respect to the evidence adduced at the trial under the pleadings, the record shows without dispute that the second floor corridor of the building in which Mrs. Wylie sustained her injury ran in a northerly and southerly direction and could be reached either by means of an automatic elevator located at the south end of the building and opening onto the corridor in a westerly direction or by a stairway immediately east of the elevator, which opened onto the corridor in a northerly direction. The floor of the corridor was composed of masonite tiling, a pressed-wood product which had been installed in the *399 building approximately ten years prior to the date of the accident. A strip of rubber matting extended the length of the corridor but covered only the center portions of the floor, where greatest traffic was to be expected. Intersecting this center runner was a strip of rubber matting extending at right angles in an easterly direction alongside the door from the stairway landing, which ended at the doorway of an office occupied by one Dr. Walker immediately east of the stairway opening. In order to make use of the rubber strip running the length of the hallway it was necessary for anyone coming from the stairway to step onto the rubber matting leading to Dr. Walker's office, to walk to the left a step or two until the intersecting strip extending the length of the hall was reached, and then to proceed along the center runner down the hallway to the northward.
On the day of her fall Mrs. Wylie came to the building of the defendant for the purpose of transacting business at an office in the north end of the second floor corridor. Choosing to use the stairway rather than the elevator, she climbed to the second floor, entered onto the hallway, walked down the center strip of rubber matting to the office at the north end and transacted her business. After completing her errand she retraced her steps to a point just short of the intersection of the hallway runner with the rubber matting extending into Dr. Walker's office. At this point she stepped off of the center runner to "cut across" the corridor diagonally in the direction of the stairway opening. As she made her first step from the rubber strip onto the waxed surface of the masonite tiling she slipped and fell and thereby sustained the injuries which were the basis for her suit.
As to other questions of fact bearing upon the issues under the pleadings, the evidence adduced by the parties was in conflict. There was evidence, however, from which the jury might have found that at the time of the accident Mrs. Wylie was wearing high-heeled shoes with leather taps; she was walking down the corridor in a normal manner without particular attention being paid by her to the condition of the floor upon which she was walking; immediately after the accident she examined the flooring where she had fallen and found that although there was no foreign substance there, such as oil or banana peeling, there was a deep skid mark about 12 to 20 inches long in the immediate location where she had slid and there was an accumulation of wax on the bottom of the heel of her shoe.
There was evidence that the floor had been waxed and polished with an electric buffing machine many times during the 10-year period of its maintenance, the last polishing and buffing having taken place some 4 to 6 weeks prior to the accident. There was evidence that, for safety reasons, buffing of wax applied to public floors was not generally recommended, and buffing after waxing was done, if at all, not as a protection to the public but for the preservation of the flooring; that wax will "pile up" along the portions of a hallway where there is little pedestrian traffic and that the more the wax "piles up" the more slippery the floor becomes; that though masonite flooring is reasonably safe for pedestrian traffic when its surface is maintained correctly, the wax used on the floor prior to the accident had been applied improperly, in that it had been permanently "burned" into the wood by long continued polishing and buffing; as the result of such "burning" the floor had become so slippery that it offered no appreciable traction when put to traffic use and consequently presented a dangerous hazard, particularly to persons using shoes with leather heels. There was also evidence that prior to the occurrence of the accident numerous complaints with respect to the slippery condition of the floor had been brought to the attention of the janitor in charge of maintenance, yet despite these complaints the same method for cleaning, polishing, and buffing the floors was continued as had been in use prior to the receipt of the complaints.
It is insisted by the appellant upon this appeal that assuming the facts which we have stated to be true the jury was not lawfully authorized, upon the facts, to return the verdict that was rendered. As authority for its position the appellant cites the following cases: Bonawitt v. Sisters of Charity of St. Vincent's Hospital, 43 Ohio *400 App. 347, 182 N.E. 661; Smith v. Union & New Haven Trust Co., 121 Conn. 369, 185 A. 81; Barnes v. Hotel O. Henry Corporation, 229 N.C. 730, 51, S.E.2d 180; McCann v. Gordon, 315 Pa. 367, 172 A. 644; Kay v. Audet, 306 Mass. 337, 28 N.E.2d 462; Fanelty v. Rogers Jewelers, Inc., 230 N.C. 694, 55 S.E.2d 493].
As we read the cases relied on by the appellant, they lay down the proposition  which is also the law of this jurisdiction  that the owner of a public building owes to a person who comes upon the premises in the pursuit of lawful business the duty of exercising reasonable care to have the premises safely constructed and maintained and to guard against subjecting such person to dangers of which the owner is cognizant or which the owner might reasonably have anticipated. See J.G. Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45, Ann.Cas. 1913C, 564; Howland, Inc., v. Morris, 143 Fla. 189, 196 So. 472, 128 A.L.R. 1013; Sears, Roebuck & Co. v. Geiger, 123 Fla. 446, 167 So. 658; Burdine's Inc., v. McConnell, 146 Fla. 512, 1 So.2d 462; National Brands v. Norton Tire Co., 150 Fla. 349, 7 So.2d 456; Matson v. Tip Top Grocery Co., 151 Fla. 247, 9 So.2d 366; Moulden v. Jefferson Standard Life Ins. Co., 147 Fla. 36, 2 So.2d 302. They also lay down the proposition that in treating the floors of such a building the owner may apply wax or oil or other such substances in the usual and customary manner without ordinarily incurring liability to one who slips and falls thereon. But they also assert the rule (which is just as clearly stated as the other two propositions decided) that where a person who has been injured by falling on such a preserved surface is able to prove to the satisfaction of a jury any affirmative acts of negliligence on the part of the owner with respect to the maintenance of such floors, either in the method or manner of oiling, waxing or polishing the floors, or that different material was used in maintenance than is ordinarily used for such purpose, or that the floors were in a different condition than would have resulted from proper waxing or oiling, and that an unusual or dangerous condition had thus been created and had existed for such a reasonable length of time as to charge the owner with knowledge, then the owner will be held liable for the injuries occurring as the sole proximate result of such negligent conduct.
The gist of the action against the defendant was its failure to maintain the floor of a corridor where persons on the premises might be expected to walk, in a condition reasonably safe to accommodate such traffic. The plaintiff has adduced proof sufficient to sustain the charge and to bring herself within the principles stated in the foregoing cases. It follows that the contention of the defendant that the judgment is not supported by the evidence is not well-founded.
During the course of the trial the lower court admitted in evidence certain photographs of the hallway, taken after the occurrence of the injury and after some alterations had been made in the rubber matting used on the floor of the hallway. It is contended that the admission of the photographs constituted reversible error. We find no material error in this regard, since it was explained by the witnesses who identified the photographs that changes had been made in the hallway since the date of the accident, and the jury was made aware of the fact that the photographs were being used solely to show the spot of the fall and its location with respect to the rubber matting and the stairway door through which the plaintiff intended to make her exit. Compare Nelson v. McMillan, 151 Fla. 847, 10 So.2d 565; Mardorff v. State, 143, Fla. 64, 196 So. 625; Baston v. Shelton, 152 Fla. 879, 13 So.2d 453; Atlantic Coast Line Co. v. Saffold, 130 Fla. 598, 178 So. 288.
It is also contended by the appellant that the trial court abused its discretion in admitting in evidence certain medical charts of the human body, and a skeleton of the arm of a body, to aid an expert witness in demonstrating to the jury the nature of the injury to the plaintiff and its resultant incapacitating effect. We find no abuse of discretion in this regard. See Larmon v. State, 81 Fla. 553, 88 So. 471; Schweitzer "Trial Manual for Negligence *401 Action", Sec. 24, p. 385; 20 Am.Jur. 616, 617, Evidence Sections 739, 740; Wigmore on Evidence, 3rd Ed. Vol. III, Sections 790, 791, pp. 173-175.
The final contention which we think merits consideration is upon the question of the damages; it being insisted by the appellant that the damages awarded Mrs. Wylie and her husband were excessive.
The record shows that as of the date of the accident Mrs. Wylie had a normal life expectancy of 16.05 years. It shows also that at the time of her injury she was engaged in the millinery business. The fall suffered by Mrs. Wylie resulted in a severe shattering "T" fracture of her left elbow involving both the ulna and the radius at the elbow joint and extending into the joint, with displacement of the humerus downwards; damage and atrophy to the muscles of the left arm and hand; damage to the nerves, veins and arteries of the left arm; destruction of entire left elbow joint space from degeneration, traumatic arthritis and adhesions; and other physical and mental effects as to which evidence was offered but which we do not think it necessary to enumerate at length. The testimony of witnesses was that the injuries sustained by Mrs. Wylie were permanent in nature, that they required expert treatment over a long period of time, that she had lost substantial earnings, would be handicapped in carrying on her business in the future, and had been put to considerable out-of-pocket expense as the result of her injuries. The burden was upon the appellant to show that the verdict of $20,000 allowed Mrs. Wylie and the verdict of $2,500 awarded her husband for the loss of companionship and consortium of his wife, were wholly unsupported by the evidence or were the result of passion, prejudice or other improper motive. See Florida Power & Light Co. v. Hargrove, 160 Fla. 405, 35 So.2d 1; Breeding's Dania Drug Co. v. Runyon, 147 Fla. 123, 2 So.2d 376; City of Orlando v. Zapfe, 145 Fla. 120, 198 So. 801; Smith v. Jackson County, 134 Fla. 354, 183 So. 738; Margaret Ann Super Markets v. Scholl, 159 Fla. 748, 34 So.2d 238. The appellant has failed to meet this burden with respect to either verdict and hence the verdicts should not be set aside.
Several other questions have been presented by the appellant on this appeal. We have given each of them due consideration and find nothing in them to shake our conclusion that the judgment appealed from should be affirmed.
It is so ordered.
TERRELL, Acting C.J., and CHAPMAN and HOBSON, JJ., concur.