292 So.2d 405 (1974)
ST. VINCENT'S HOSPITAL, INCORPORATED, et al., Appellants,
v.
Hattie L. CROUCH, Appellee.
AUCHTER COMPANY et al., Appellants,
v.
Hattie L. CROUCH et al., Appellees.
Nos. R-349, R-368.
District Court of Appeal of Florida, First District.
February 28, 1974.
Rehearing Denied April 23, 1974.
Noah H. Jenerette, Jr., of Boyd, Jenerette, Leemis & Staas, Jacksonville, for appellants-St. *406 Vincent's Hospital, Inc., and others.
Claude K. Slater and Richard L. Randle, of Slater & Randle, Jacksonville, for appellants-Auchter Co., and others.
Jack F. Wayman, Jacksonville, for appellee, Hattie L. Crouch.
RAWLS, Chief Judge.
This extensive record developed from a trip-and-fall accident when appellee-plaintiff Crouch was injured after falling over a small pile of building material adhering to a parking lot owned by St. Vincent's Hospital (hereinafter referred to as the hospital).
Appellee-Crouch sued the hospital and its insurer, United States Fidelity & Guaranty Company, alleging, inter alia, that the hospital carelessly and negligently failed to maintain its parking lot in a reasonably safe condition in that the hospital placed or failed to remove a small pile of building material similar to concrete or mortar of sufficient height to cause persons to trip on same.
The hospital, as a third-party plaintiff, sued the Auchter Company alleging, inter alia, that it had, as a general contractor, agreed to accomplish certain work on the hospital's premises and, inplicit in the undertaking, to use reasonable care in accomplishing such work so as to avoid injury to those persons lawfully using the hospital and its grounds.
By its answer to the third-party complaint, Auchter (and its liability insurance carrier) contended, inter alia, that the hospital was guilty of active negligence because it was in possession and control of the parking lot, knew or should have known of the presence of the building material, and carelessly and negligently failed to remove same.
The jury returned a verdict for appellee-Crouch against the hospital and its carrier in the amount of $250,000.00 and on the hospital's third-party complaint rendered a verdict of $250,000.00 in favor of the hospital against Auchter and its carrier. A final judgment was entered in favor of appellee-Crouch against the hospital in the sum of $250,205.50 and in favor of the hospital against Auchter in the sum of $261,132.65 which included attorney's fees and taxable costs.
On the morning of September 25, 1969, appellee-Crouch visited her husband who was a patient in the hospital. Upon leaving the hospital a "little after noon", she observed workmen removing barricades composed of sawhorses from the main hospital parking lot. Mrs. Crouch returned to the hospital around six o'clock that evening and parked her automobile in the area that had been blocked. Mrs. Crouch testified that the front end of her automobile was "pretty close" to the left parking line and another automobile was parked to her left; that as she alighted from her automobile, due to the narrow space between the two cars, she "sidled forward, so to speak" and, as she approached the front of the car, her foot hit a raised object resulting in her falling between the two cars. The raised object was subsequently identified as a glob of odd-shaped concrete three to four inches in diameter and about two inches in height. As a result of this fall, Mrs. Crouch sustained serious injuries.
That appellee-Crouch occupied the status of business invitee at the time she suffered the accident while on the hospital's premises and that the hospital owed to her a non-delegable duty to provide her safe premises has not been questioned by either Auchter or the hospital.
The hospital and Auchter both urge that Mrs. Crouch was guilty of contributory negligence as a matter of law and that the trial court erred in failing to grant motions for a directed verdict at the conclusion of appellee-Crouch's case and at the conclusion of all the evidence, and in denying motions for a new trial and for judgments notwithstanding the verdict. As to *407 this postulate, they argue that it was broad, open daylight at the time of the accident; that the glob of building material was in plain sight and that Mrs. Crouch just simply was not looking where she was walking; and that there was nothing that prevented her from seeing the concrete if she had looked. Auchter cites Bowles v. Elkes Pontiac Co., Earley v. Morrison Cafeteria Co. of Orlando, and Matson v. Tip Top Grocery Co.[1] as authorities for the basic rule that a plaintiff owes to herself a duty to observe the obvious and apparent condition of the premises.
Auchter and the hospital especially stress Becksted v. Riverside Bank of Miami[2] as being a case strikingly similar on the facts to the case sub judice. There, the plaintiff was injured when she stepped on a grating covering a drain in a parking lot maintained by the defendant bank. In upholding a summary judgment for defendant rendered by the trial judge, the Supreme Court, citing Bowles v. Elkes Pontiac Co., supra, and Matson v. Tip Top Grocery Co., supra, after observing that the subject drain "... was plainly visible and could have been seen by plaintiff if she had been looking, and she said she wasn't looking", affirmed the judgment of the trial court.
Appellee-Crouch relies on that line of cases which stand for the proposition that the question of contributory negligence is a factual matter for the jury to decide,[3] and contends that the following statement in City of Jacksonville v. Stokes[4] and subsequent cases citing same with approval[5] is controlling.
"... If visibility alone settled contributory negligence every case of slipping on a floor or of encountering any stationary object would automatically be a case of non-liability for in all these cases the condition which caused the harm was visible. The question always is whether the plaintiff used due care for his own safety, taking into account all the circumstances, of which the visibility of the object encountered is an important one, but still only one of the circumstances."
As is oftentimes the case, we find two lines of decisions which are difficult to reconcile. Particular factual matters have been seized upon by the appellate courts of this state in holding in a specific case that those facts constitute "contributory negligence as a matter of law", and in another case involving analogous factual circumstances the rule that "contributory negligence is a question for the jury" has been invoked. In the instant cause, the appellee testified that she was looking ahead and that she had to "sidle" between the two parked cars. We decline to hold as a matter of law that under these circumstances she had a duty to keep her eyes on the ground and her failing to do so was contributory negligence on her part. The question of appellee-Crouch's contributory negligence was properly submitted to the jury which resolved same in favor of appellee.
The hospital and Auchter also both contend that the verdict of $250,000.00 in favor of appellee-Crouch is excessive. At the time of the accident appellee was 58 years of age. Approximately two years prior to her accident, she had retired from her employment with Southern Bell Telephone Company to stay home and take care *408 of her husband who was seriously ill. She was enjoying excellent health and performing all of her housework, yard work, nursing her husband, shopping, and as related above, driving her car until the time of the accident. The medical testimony is uncontroverted that, as a result of the accident, Mrs. Crouch suffered a fractured hip consisting of a subcapital breaking of the head of the right femur. She was initially hospitalized from September 25 until October 12, 1969, during which time an open reduction was performed, with the hip being mended by the insertion of metal pins. Her sick husband was taken home from the hospital on October 10, 1969, with other people having to care for him. Appellee's husband died on October 14, 1969; she was ambulatory only through the use of a walker or wheelchair and was required to use the services of an ambulance to go to her husband's funeral. From October 12, 1969, until March 29, 1971 (the date of her second hospitalization), she required a walker in order to ambulate and was not physically capable of caring for her personal needs. Her hip developed aseptic neurosis. She was again hospitalized and another operation performed removing the head of the femur and replacing same by a metal device known as a Moore prosthesis. Her physician testified at the time of the trial that she had reached her best point of medical recovery (which he said will probably get worse) and that she suffered at that time a 25% disability.
Auchter reviews at great length the facts and decision of our sister court in Smith v. Goodpasture[6] wherein that court reversed and remanded a verdict and judgment in the sum of $78,000.00 for entrance by the trial court of a remittitur or, in the alternative, for a new trial. Although the factual circumstances recited in Goodpasture appear to be of severe gravity, we, of course, have not had the benefit of the entire record in that cause. Assuming that the factual matters are basically analogous in the instant cause and those in Goodpasture, we unhesitatingly decline to follow that decision of the Second District Court of Appeal.
By its brief, the hospital, after stating "... Admittedly, each case and each injury is peculiar to itself, and does not readily lend itself to comparison, but certainly some standards have been set over the years from which some insight can be drawn", reviews numerous appellate decisions reflecting verdicts of lesser amounts for injuries of equal or more gravity. Judges, lawyers, and laymen will long ponder what motivates a particular jury to reach a given verdict in a specific case.
A review of the record reveals that the trial judge instructed the jury fully and fairly on the elements of damage. In considering post-trial motions, the trial judge, who had the advantage of presiding over this three-day trial, of viewing the witnesses and hearing the extensive evidence, failed to find that the verdict was so excessive as to shock his judicial conscience.
Here, it is our chore to review the legality of the verdict rendered; it is not our duty, under the guise of appellate review, to enter the jury box and render a verdict to our liking.
Finally, the hospital and Auchter are not in accord as to who should shoulder the responsibility for appellee-Crouch's injuries. Auchter contends that St. Vincent's had actual knowledge of the concrete over which appellee-Crouch tripped and fell[7] and that the trial court erred in refusing to submit this issue to the jury. We have reviewed this lengthy record and fail to find competent substantial evidence to support this contention. Auchter also insists that there was no substantial competent evidence that Auchter placed the concrete on the parking lot. The evidence reveals that Auchter was engaged in major *409 construction efforts on the hospital grounds; that concrete was offloaded from trucks and wheelbarrowed by Auchter in performing its contract; that Auchter routinely cleaned up concrete that splashed from wheelbarrows; and that one witness followed the concrete drippings from the point of the accident to the site of the wheelbarrow ramp where Auchter was performing construction work. Although considerable evidence was adduced by Auchter as to St. Vincent's dominion and control of the site where Mrs. Crouch was injured, the factual determination as to the offending party was fairly presented to the jury which resolved the matter contrary to Auchter's contentions. Other points posed by Auchter we find to be without merit.
The verdict and judgment rendered in favor of the hospital and against Auchter are affirmed.
Affirmed.
WIGGINTON, Associate Judge, concurs.
DREW (Ret.), Associate Judge, dissents.
DREW, Associate Judge (dissenting).
I respectfully dissent.
The negligence alleged here is the act of the builder in failing to remove, and the hospital in allowing to remain, a blob of concrete in the parking area for automobiles, "three or four, maybe four inches across, roughly two inches high, and it was jagged"; "it was yellowish gray or light gray".[1] The parking area was black asphalt.
If the failure to remove such object from an area designed primarily for the parking of automobiles constitutes actionable negligence, the failure of the plaintiff to observe it and avoid injury when first alighting from her car[2] constitutes contributory negligence, which, at the time of this trial, would have precluded recovery.
The question here is negligence, whether committed by a plaintiff or a defendant. If a plaintiff is negligent and the negligence contributes to the injury, the law bars recovery. Here the facts, which must be the basis for establishing negligence, are not in dispute. Under such circumstances, two questions of law were presented. Do such facts constitute negligence, and, if they do, was the plaintiff precluded from recovery because of her negligence in failing to see what she said was plainly observable? On both points I think a verdict should have been directed for the defendants.
Moreover, even in these days of colossal verdicts, an award of more than a quarter million dollars for a broken hip in a 58-year-old woman with a fairly normal recovery from such an injury, where her total proven actual money loss was a little more than $6,000.00, is, I think, grossly excessive. I reach this conclusion from the disclosures of the record measured by the experience of more than twenty years as an appellate judge in reviewing cases of this kind.
I would send the case back with directions to enter a judgment for the defendants for the reasons above. If I am wrong on this point, the case should assuredly be returned for a new trial on the question of damages.
NOTES
[1] Bowles v. Elkes Pontiac Co., (Fla. 1952) 63 So.2d 769; Earley v. Morrison Cafeteria Co. of Orlando, (Fla. 1952) 61 So.2d 477; Matson v. Tip Top Grocery Co., Inc. (1942) 151 Fla. 247, 9 So.2d 366.
[2] Becksted v. Riverside Bank of Miami, (Fla. 1956) 85 So.2d 130.
[3] First Federal Savings & Loan Ass'n v. Wylie, (Fla. 1950) 46 So.2d 396; Sokolsky v. Feigen, (Fla. 1950) 49 So.2d 88; Mertz v. Krueger, (Fla. 1952) 58 So.2d 160.
[4] City of Jacksonville v. Stokes, (Fla. 1954) 74 So.2d 278.
[5] Isenberg v. Ortona Park Recreational Center, Inc., (Fla.App. 1st 1964) 160 So.2d 132; Burkett v. Belk-Lindsey Company, (Fla.App. 2nd 1962) 137 So.2d 266.
[6] Smith v. Goodpasture, (Fla.App. 2nd 1965) 179 So.2d 240.
[7] Winn-Dixie Stores, Inc. v. Fellows, (Fla. App. 1st 1963) 153 So.2d 45.
[1] This was the description of the object given by the plaintiff after she returned to her car following the injury.
[2] See footnote 1, supra.